[L. A. No. 29643.   In Bank.   June 26, 1969.]

JOSEPH METZINGER et al., Plaintiffs and Appellants, v. MANHATTAN LIFE INSURANCE COMPANY, Defendant and Respondent.

Herbert Z. Ehrmann, Frances Ehrmann and Rose & Ehrmann for Plaintiffs and Appellants.

Adams, Duque & Hazeltine, Loyd P. Derby and James S. Cline for Defendant and Respondent.

BURKE, J.—Plaintiffs are the named beneficiaries of group insurance on the life of one Cholodenko.[1] They appeal from a judgment denying recovery thereon and declaring the insurance contract null and void for fraudulent representations made in the application therefor. As will appear, we have concluded that the judgment should be reversed for failure of defendant to establish its compliance with a contract provision for furnishing a copy of the application to the beneficiaries or to the insured prior to the latter's death.

Plaintiffs and Cholodenko were stockholders, officers and directors of the M & M Meat Company, Inc. In April 1963 Cholodenko submitted a written health application to defendant insurance company, seeking insurance on his life under a group policy issued by defendant to a group insurance trust, of which group M & M was a member. In the application Cholodenko represented that he was in good health, that he had never had cancer, an ulcer of the stomach or duodenum, or any chronic disease, and that during the preceding two years he had not consulted with or been treated by any surgeon or practitioner except for regular medical checkups.

In June 1963 defendant approved the application and the following month a certificate of insurance under the group policy was delivered to Cholodenko evidencing insurance of $15,000 on his life, effective July 1, 1963, and naming plaintiffs as beneficiaries. In April 1964 Cholodenko died and plaintiffs applied to defendant for the proceeds of the policy. Defendant, which had discovered evidence that Cholodenko had made fraudulent misrepresentations as to his health on his application, denied liability on that ground. This action to recover on the policy followed.

At trial ample evidence was introduced to sustain the trial court's finding that "each of the statements and representations contained in the written application of Leo L. Cholodenko was false, incomplete and untrue and was known by Leo L. Cholodenko to be false, incomplete and untrue at the time said statements and representations were made. . . ." The trial court also received evidence relating to defendant's regular business practices in handling health applications, and the application of Cholodenko in particular, with respect

---

[1]One of the plaintiff beneficiaries, deceased since the filing of this action, is now represented by his executors.

to the return of copies of such applications to the applicant, his'member company, or the beneficiaries. Over objections by plaintiffs the court also admitted in evidence the health application made by Cholodenko. As stated, the court ruled that Cholodenko's misrepresentations vitiated the insurance, and denied recovery.

As grounds for reversal plaintiffs urge error by the court in admitting the application into evidence, in that (1) it was not attached to the policy as assertedly required by California Insurance Code section 10113,[2] and (2) a copy of the application was not furnished to Cholodenko or his beneficiaries prior to his death, as assertedly required under certain provisions of both the basic group policy and the certificate of insurance issued to him.

The parties disagree as to whether section 10113,[3] which is found in a chapter of the Insurance Code dealing with "The Contract" in general, was intended to apply to group life insurance transactions. Group life insurance is dealt with in a separate chapter, commencing with section 10200. Section 10113 by its terms refers to the insurance "policy" rather than to the insurance certificate which evidences individual coverage under a group policy. (§§ 10209, 10209.1.) Sections 10206[4] and 10207,[5] which relate specifically to group life

---

[2]Unless otherwise stated, all section references are to the Insurance Code.

[3]Section 10113 in pertinent part: "Every policy of life, disability, or life and disability insurance issued or delivered within this State . . . by any insurer . . . shall contain and be deemed to constitute the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings, of either of the parties thereto or of any other person, unless the same are indorsed upon or attached to the policy; and all statements purporting to be made by the insured shall, in the absence of fraud, be representations and not warranties. Any waiver of the provisions of this section shall be void."

[4]Section 10206: "The [group] policy shall provide that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue; and that no statement made by any employee insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such employee's lifetime nor unless it is contained in a written application signed by him."

[5]Section 10207: "The [group] policy shall contain a provision that:
"(a) The policy, the application of the employer and the individual applications, if any, of the employees constitute the entire contract of insurance.
"(b) All statements made by the employer or by the individual employees are, in the absence of fraud, representations and not warranties.
"(c) Such statements will not be used in defense to a claim under the policy, unless contained in a written application."

insurance, cover similar subject matter but neither section requires that the individual employee's health application be attached either to the basic group policy or to the individual certificate of insurance issued thereunder.

However, even if it be assumed that section 10113 does apply to group life insurance, it may be noted that defendant does not seek, in violation of its provisions, to "incorporate" anything whatever into the policy "by reference to any . . . application or other writings" not indorsed upon or attached to the policy; rather defendant asserts that it was in reliance upon Cholodenko's false health representations that it was induced to issue insurance to him. (See §§ 350, 443.)[6] Additionally, the requirements of section 10113 appear to have been met in this case. The trial court specifically found, upon sufficient evidence, that a copy of the written application "relative to Cholodenko" was attached to the basic group policy. Although the court also found that no copy of the application was attached to the certificate of individual insurance when it was issued and delivered to Cholodenko, no statutory provision requires such attachment. ■ Even considering the certificate to constitute a part of the contract under a group policy (see *Humphrey v. Equitable Life Assur. Soc.* (1967) 67 Cal.2d 527, 534 [63 Cal.Rptr. 50, 432 P.2d 746]; *John Hancock Mut. Life Ins. Co. v. Dorman* (9th Cir. 1939) 108 F.2d 220, 223), section 10113 does not purport to apply to individual certificates as distinguished from the basic group policy. Accordingly, defendant was not precluded from relying on Cholodenko's health application by reason of any provision found in section 10113.

Plaintiffs also contend that a provision found in both the certificate of insurance delivered to Cholodenko and the basic group policy, required that a copy of the application be furnished to Cholodenko or to the beneficiaries prior to his death in order to be admissible at trial.[7]

[6]Section 350: "A representation may be oral or written."

Section 443: "Every express warranty made at or before the execution of a policy shall be contained in the policy itself, or in another instrument signed by the insured and referred to in the policy, as making a part of it."

[7]The certificate of insurance provides in paragraph 3 of section II thereof: "No statement made by the Individual relating to his insurability shall be used in contesting the validity of his insurance with respect to which such statement was made after such insurance has been in force for a period of two years during the Individual's lifetime nor unless it is contained in a written instrument signed by such Individual *and a copy of such instrument is or has been furnished to the Individual or to his Beneficiary.*" (Italics added.)

A similar provision appears in section 12 of the basic group policy.

As stated, the trial court found that a copy of the application was not attached to the certificate of insurance when it was delivered to Cholodenko. It is undisputed, and the court also found, that a copy of the application *was* furnished to plaintiffs (beneficiaries) following Cholodenko's death. No express finding was made as to whether or not a copy was furnished to either Cholodenko or plaintiffs' prior to the death. Defendant urges that the furnishing of the application after death constituted compliance with the provision upon which plaintiffs rely.

■ However, the purpose of such a provision is to provide an opportunity to review the application while the insured is still alive. and to correct misstatements which may appear therein. (See *Layman* v. *Continental Assur. Co.* (1968) 430 Pa. 134 [242 A.2d 256, 258].) Also, the language of the provision is calculated to lead an insured to believe that if a copy of the application containing his statements was not furnished during his lifetime, such statements could not be relied upon by the insurer after his death. ■ Under familiar rules any uncertainties in the meaning of the provision must be construed in favor of imposing liability. (*Humphrey* v. *Equitable Life Assur. Soc., supra,* 67 Cal.2d 527, 532.) As noted in the case just cited (p. 534), the individual certificate is the only document which the insured sees or is given at any time and the insurer, who drafts the instrument in language it selects, should not thereafter be accorded the construction most favorable to itself rather than to the insured. ■ Although the furnishing of a copy of the application to the insured or to his beneficiary is not required by statute in California, the earlier language of the sentence in which the provision appears (see fn. 7, *ante*) reflects the incontestable provision which is required by section 10206 (fn. 4, *ante*). Defendant insurer, having chosen to enlarge upon that provision, may not now escape the application thereof most beneficial to the insured.[8]

■ Defendant's contention that Cholodenko's fraudulent health representations vitiated the incontestable clause is without merit. As held in *Dibble* v. *Reliance Life Ins. Co.* (1915) 170 Cal. 199, 209 [149 P. 171, Ann. Cas. 1917E 34],

---

[8]*Coleman* v. *Aetna Life Ins. Co.* (7th Cir. 1958) 261 F.2d 296, 299 [3] [72 A.L.R.2d 688], is not persuasive to the contrary. The construction in favor of the insurer there was made without discussion of the purpose of the provision for furnishing a copy, without citation of authority, and without discussion of the general rule of construction favoring the insured.

the incontestability provision cannot be reasonably construed as either expressly or impliedly excepting an action or defense based on fraud. (See also *New York Life Ins. Co.* v. *Hollender* (1951) 38 Cal.2d 73, 77 [237 P.2d 510] ; *Coodley* v. *New York Life Ins. Co.* (1937) 9 Cal.2d 269, 272-274 [70 P.2d 602].)

As stated, the trial court failed to expressly find whether or not a copy of the application was furnished under the incontestable provision, prior to Cholodenko's death. Since plaintiffs made a written request for a specific finding on such issue prior to the entry of judgment, we may not on appeal infer a finding in defendant's favor, even if, as defendant urges, there is evidence to support such a finding. (Code Civ. Proc., § 634; see *Culbertson* v. *Cizek* (1964) 225 Cal.App.2d 451, 465-466 [37 Cal.Rptr. 458].) Nor, may it be said without detailing the language of the findings which were made, do we believe such a finding could reasonably be inferred from those which the court did make.

Additionally, all of defendant's evidence on the point was directed at establishing that a copy of the application was attached to the certificate of individual insurance when it was issued and delivered to Cholodenko. However, the trial court specifically found that a copy was *not* so attached, and defendant neither offered any evidence nor contended that a copy of the application was furnished in any other manner prior to Cholodenko's death.

The judgment is reversed.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Acting Presiding Justice Fourt in the opinion prepared by him for the Court of Appeal in *Metzinger* v. *Manhattan Life Ins. Co.* (Cal. App.) 75 Cal. Rptr. 621.