[No. B214669. Second Dist., Div. Two. Jan. 19, 2010.]

JULIE NIETO, Plaintiff and Appellant, v.
BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE
COMPANY, Defendant and Respondent.

62

## Counsel

Shernoff Bidart Darras Echeverria, William M. Shernoff, Evangeline Fisher Grossman and Joel A. Cohen for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Gregory N. Pimstone and Joanna S. McCallum for Defendant and Respondent.

## Opinion

**DOI TODD, J.**—Plaintiff and appellant Julie Nieto failed to disclose information about her medical condition and treatment on a health insurance application she submitted to defendant and respondent Blue Shield of California Life & Health Insurance Company (Blue Shield). She filed an action against Blue Shield after it rescinded her insurance policy. The trial court granted Blue Shield's motion for summary judgment, ruling that it was entitled to rescission as a matter of law in view of the undisputed evidence that appellant made material misrepresentations and omissions regarding her medical history.

We affirm. The undisputed evidence established that the information appellant provided to Blue Shield was false and, contrary to appellant's assertions, Blue Shield had no statutory duty to show that appellant's application had been physically attached to the insurance policy nor to conduct further inquiries during the underwriting process to ascertain the truthfulness of appellant's representations before it issued the policy.

## FACTUAL AND PROCEDURAL BACKGROUND

*Appellant's Medical History.*

Appellant saw orthopedist Martin Nation, M.D., several times between January 2002 and May 2005 for her back pain. She received medical treatment for her back problems in February 2005 when she saw Dr. Nation three times. During her first visit, appellant stated she was suffering from a pain in her hip that went down the outside and back of her leg, and Dr. Nation directed his nurse to give her a steroid injection. Appellant received a second steroid injection during her next visit, after she told Dr. Nation that she was not significantly better and continued to have pain radiating from her back to the middle of her thigh. During her third visit, appellant told Dr. Nation that she was still experiencing pain in her lower back and down her right leg. Dr. Nation ordered an X-ray and prescribed an oral steroid and other medications. He wrote out a prescription stating that

appellant was being treated for "severe leg and back pain" and asked that she be excused from work "when pain is severe."

Appellant also visited chiropractor Dr. Jeffrey Rockenmacher periodically between 1996 and 2002. Thereafter, she saw him at least 17 times between February and May 2005 when he treated her for lower back and hip pain. During a February 22, 2005 visit to Dr. Rockenmacher, appellant filled out a "case history update" form on which she indicated that her present complaint was "pain in lower back/hip-when walking," she had consulted with Dr. Nation who had treated her with a cortisone shot for a pinched nerve, and she was then taking three prescribed medications on a regular basis.

Between spring 2004 and spring 2005, appellant filled at least 10 prescriptions for four different medications, including Soma, Tylenol with codeine, Motrin and Xanax. These prescriptions were in addition to the two steroid injections and oral steroid she had received from Dr. Nation.

*Appellant's Health Insurance with Blue Shield.*

In 2005, Blue Shield offered several health insurance plans to individuals. As part of the determination whether to issue coverage, Blue Shield would provide an application to an individual seeking coverage that requested detailed information of past and current health problems, treating physicians, prescribed medications and recommended treatment. Using proprietary written guidelines, Blue Shield evaluated the responses provided by each applicant to determine eligibility for health insurance and, if so, at what premium rate. In evaluating an application, Blue Shield relied on the information provided by the applicant; it did not assume the applicant was untruthful. Blue Shield would seek to review medical or pharmacy records when the applicant disclosed a condition or treatment that warranted further assessment; on the other hand, where no such condition or treatment was disclosed, Blue Shield would not review medical or pharmacy records for the purpose of ascertaining the truthfulness of the applicant's responses. If the application was incomplete, Blue Shield would contact the applicant to provide additional information. This overall review process is referred to as underwriting.

In February 2005, at the request of appellant and her domestic partner David Moore, Blue Shield mailed an individual and family health plan informational packet to appellant's residence. According to appellant, she "just thought it would be a good idea to have insurance" after being uninsured for the previous seven years. On May 5, 2005—the same day as one of appellant's appointments with Dr. Rockenmacher—Moore and appellant completed and signed the written application included in the packet. Appellant "looked over" the application before signing it.

In the "Medical History" portion of the application, Moore and appellant answered "no" to almost every question, except for indicating that appellant menstruates. Moore and appellant answered "yes" to question 11, asking whether Moore or "any applying family member" had in the past 20 years received treatment, including medications, for symptoms pertaining to the "Musculo-Skeletal system—such as: neck, spine/back sprain, pain, injury, sciatica, herniated or bulging disc(s), or problems . . . ." In the part of the application requesting details about any "yes" answer in the previous medical history section, Moore referenced question 11 and responded that his diagnosis was a bulging disc lasting from October 1995 to July 2000 and that the condition did not exist at the present time. Appellant later testified at her deposition that the additional information provided in the application about back problems related solely to Moore's condition and treatment.

In the application, appellant also answered that her last doctor's visit had occurred three years earlier when she saw Abelardo Pita, M.D., for the flu. She wrote that the visit had resulted in "no finding" and her present health status was "good." She did not inform Blue Shield in the application or otherwise about her visits to Dr. Nation or Dr. Rockenmacher. Appellant answered "no" to the question asking if she had "[t]aken or been ordered to take prescription medication(s)" within the past 12 months.

Appellant signed and dated the application directly below the following attestation: "I have read the summary of benefits and the terms and conditions of coverage and authorizations set forth above. I understand and agree to each of them. I alone am responsible for the accuracy and completeness of the information provided on this application. I understand that neither I, nor any family members, will be eligible for coverage if any information is false or incomplete. I also understand that if coverage is issued, it may be cancelled or rescinded upon such a finding." Appellant confirmed in her deposition that she took responsibility for the accuracy and completeness of the information provided in the application.

Blue Shield sales agent Susan Corrington received appellant and Moore's application via facsimile. Corrington contacted appellant and Moore several times throughout May 2005, seeking information that was missing from the application. Once Corrington received the missing information, she forwarded the application to Jennifer Krebs, a Blue Shield underwriter, who reviewed the application for accuracy and completeness. Upon determining the application was incomplete, Krebs instructed the processing department to send appellant an addendum to the application requesting information about her last doctor's visit. After receiving the completed application in June 2005, Krebs underwrote the application. She confirmed that appellant had no prior claims history with Blue Shield. She reviewed appellant's responses and

determined there were "no concerns." On the basis of Moore's responses, she requested additional information about his chiropractic visits. He responded that he must have filled out the application incorrectly, writing that he had not seen a chiropractor in over six years and was not having any current back problems. After receiving this information, Blue Shield approved the application and issued a health insurance policy (policy) to appellant and Moore effective July 1, 2005.

Consistent with the admonition on the application, the policy provided in pertinent part: "Blue Shield Life may terminate this Policy for cause immediately upon written notice for the following: [¶] a. Material information that is false or misrepresented information provided on the enrollment application or given to the Plan."

On September 30, 2005, Blue Shield's underwriting investigation unit (UIU) opened a file on appellant after it received a referral from the medical management department indicating that appellant had received a diagnosis of necrosis of the hip and was scheduled for hip replacement surgery on November 10, 2005. As part of the investigation the UIU sought and obtained appellant's medical and pharmacy records. At that point, Blue Shield learned that immediately preceding her application appellant had received extensive treatment for back and hip pain and had been prescribed multiple medications. If Blue Shield had been aware of the undisclosed information it either would have declined to issue the policy or, at a minimum, would not have issued the policy until receiving additional information from appellant.

Via a November 16, 2005 letter to appellant, Blue Shield rescinded appellant's policy. Blue Shield conducted an internal investigation following appellant's reporting the rescission to California's Department of Insurance, Consumer Services Division, which confirmed the rescission decision on the same bases set forth in the letter to appellant.

*Pleadings and Summary Judgment.*

Appellant filed a complaint against Blue Shield in July 2006, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory relief and violation of Business and Professions Code section 17200. She alleged that Blue Shield's rescission of her policy constituted unlawful postclaims underwriting in violation of Insurance Code section 10384 and was an unreasonable use of her insurance application in violation of Insurance Code section 10381.5.[1] She sought general, special and punitive damages, as well as declaratory and injunctive relief.

---

[1] Unless otherwise indicated, all further statutory references are to the Insurance Code.

Blue Shield answered and cross-complained against appellant. It alleged that appellant "made material false representations and omitted material facts in her Application concerning her medical condition and history" and that it would not have issued the policy had appellant provided complete and accurate information. It sought a declaratory judgment that it rightfully rescinded the insurance contract, thereby precluding appellant from maintaining her action.

Blue Shield initially moved for summary judgment in September 2007, and the trial court granted the motion on December 4, 2007, on the ground that Blue Shield had no duty to further investigate appellant's medical history because her application did not provide notice of any concerns. The same day, the Second Appellate District of the Court of Appeal issued an opinion in *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528 [72 Cal.Rptr.3d 888] (*Ticconi*); the decision addressed two statutes—sections 10113 and 10381.5—which appellant had argued barred summary judgment. On its own motion, the trial court vacated its order granting summary judgment and directed the parties to submit supplemental briefs addressing the new authority. The briefs also addressed a Fourth Appellate District of the Court of Appeal decision issued later in December 2007, *Hailey v. California Physicians' Service* (2007) 158 Cal.App.4th 452 [69 Cal.Rptr.3d 789] (*Hailey*). Following briefing, the trial court reconsidered its prior order and denied the motion without prejudice.

In April 2008, Blue Shield renewed its motion for summary judgment on the complaint and cross-complaint on the ground that the undisputed evidence showed it lawfully rescinded the policy because appellant concealed material information when she applied for health insurance. It offered evidence to show that appellant not only failed to disclose information about her treatment for back pain but also omitted information about treatment and prescriptions for respiratory problems and anxiety. It specifically argued that neither *Ticconi* nor *Hailey* applied to preclude summary judgment. In a July 2008 order, the trial court ruled that, even given recent authority, an insurer retains the right to rescind an insurance policy due to the insured's fraud. Nonetheless, it denied Blue Shield's motion on the ground that its separate statement failed to establish that the material facts were undisputed with respect to each element of fraud.

Blue Shield filed the final and operative motion for summary judgment in August 2008. In support of the motion, Blue Shield offered declarations from underwriting and sales staff; excerpts of deposition testimony from appellant, Dr. Nation and Moore; and portions of appellant's medical records. Relying on this evidence, the separate statement was structured so as to address the requisite elements of fraud.

Appellant opposed the motion on procedural grounds as well as the ground that fraud was a question of fact. In support of her opposition, she submitted her own declaration and deposition excerpts from Blue Shield employees involved in issuing the policy. She also filed objections to portions of Blue Shield's evidence.

Approximately two months after a November 2008 hearing, the trial court issued an order granting summary judgment. The trial court explained that the motion was properly filed, as it addressed a new issue that was raised by the pleadings. It also effectively overruled appellant's evidentiary objections, noting that while appellant objected to the relevancy of certain evidence she did not dispute the accuracy of the material facts presented by the evidence. It determined the undisputed evidence satisfied the elements of fraud or deceit justifying Blue Shield's rescission of the policy. More specifically, it found the undisputed evidence showed that appellant's application contained a number of material false representations and omissions concerning appellant's medical history; appellant was either aware the representations were false or exhibited a reckless disregard for the truth; appellant made the representations with the intent of inducing Blue Shield's reliance thereon; Blue Shield relied on the information in the application; and Blue Shield was harmed by issuing the policy. Given this undisputed evidence, the trial court further determined that the Insurance Code gave Blue Shield the right to rescind the policy.

The trial court expressly rejected appellant's assertion that Blue Shield had engaged in postclaims underwriting in violation of section 10384, explaining that before issuing the policy Blue Shield properly completed its underwriting process and resolved all reasonable questions arising from the information provided by appellant. It further found the evidence showed that Blue Shield was not required to do more, as there was nothing in the application to alert Blue Shield that appellant's responses were false. It reasoned that even if Blue Shield had been required to investigate further, there was no evidence to suggest that it would have learned of appellant's undisclosed condition and treatment. Finally, it concluded that whether Blue Shield attached or endorsed the application to the policy had no bearing on its ability to rescind in view of appellant's material misrepresentations and omissions. Correspondingly, it found that the undisputed evidence showed Blue Shield did not act in bad faith by rescinding the policy.

Judgment was entered in January 2009 and this appeal followed.

## DISCUSSION

Renewing many of the arguments she raised below, appellant contends the trial court erred in granting summary judgment. She initially asserts the

motion was procedurally infirm. On the merits, she contends that summary judgment was barred because there were triable issues of fact concerning the existence of fraud and, alternatively, because even if fraud had been shown the Insurance Code does not permit rescission where the application is neither attached to nor endorsed on the policy, or where the insurer engages in postclaims underwriting. We find no merit to any of these contentions.

## I. *Standard of Review.*

We review a grant of summary judgment de novo. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517]; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843–857 [107 Cal.Rptr.2d 841, 24 P.3d 493].) The general rule is that summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment meets this burden by presenting evidence demonstrating that one or more elements of the cause of action cannot be established or that there is a complete defense to the action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co., supra,* at pp. 853–854.) Once the defendant makes this showing, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co., supra,* at p. 850.) To determine whether the parties have met their respective burdens, we consider " 'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.' " (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) A plaintiff opposing summary judgment cannot rely upon the mere allegations or denials of its pleadings, but "shall set forth the specific facts" based on admissible evidence showing a triable issue exists. (Code Civ. Proc., § 437c, subd. (p)(2); see *Borders Online v. State Bd. of Equalization* (2005) 129 Cal.App.4th 1179, 1188 [29 Cal.Rptr.3d 176].)

## II. *The Summary Judgment Motion Was Properly Filed.*

Appellant raises two procedural challenges to the summary judgment motion. She argues that it was improperly refiled in violation of Code of Civil Procedure section 437c, subdivision (f)(2) and that it was improperly premised on issues not raised by the pleadings.

With respect to her first challenge, Code of Civil Procedure section 437c, subdivision (f)(2) provides that "a party may not move for summary judgment based on issues asserted in a prior motion for summary adjudication and

denied by the court, unless that party establishes to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion." In contrast to our independent review of the summary judgment motion itself, we review a trial court's decision to allow a party to file a renewed or subsequent motion for summary judgment for an abuse of discretion. (See *Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1812 [29 Cal.Rptr.2d 36].)

Even setting aside that Blue Shield's motion for summary judgment falls outside the scope of Code of Civil Procedure section 437c, subdivision (f)(2), as the prior motion was one for summary judgment rather than summary adjudication, the trial court properly exercised its discretion in determining that this provision did not bar summary judgment because the operative motion addressed an issue not raised by the prior motion. Indeed, in its order denying the prior motion the trial court expressly stated that the motion's failure to address the elements of fraud was the basis for its denial. The operative summary judgment motion addressed this previously omitted issue, asserting that Blue Shield was entitled to judgment because appellant committed fraud on the application and specifically identified the elements of fraud established by the undisputed evidence.

These circumstances are akin to those in *Patterson v. Sacramento City Unified School Dist.* (2007) 155 Cal.App.4th 821 [66 Cal.Rptr.3d 337], where the appellate court rejected the plaintiff's argument that the trial court improperly granted a second motion for summary judgment after denying the first. The court acknowledged that while the plaintiff was "correct that both motions for summary judgment involved 'duty' in a *general* sense, the District's two motions were not identical and involved different legal theories. The first motion focused on whether there was a statutory basis for imposing a duty; the second motion focused on whether the common law defense of assumption of risk applied to negate any claim of duty. A comparison of the arguments and material facts shows that the District's second motion for summary judgment is not simply a 'reformatted, condensed, and cosmetically repackaged' version of its first motion. [Citation.]" (*Id.* at p. 827; see also *Abassi v. Welke* (2004) 118 Cal.App.4th 1353, 1360 [14 Cal.Rptr.3d 336] [proper exercise of discretion to entertain and rule upon second summary judgment motion that was not based on new evidence, where the parties had an opportunity to brief the issue, a hearing was held and summary judgment was the most efficient manner in which to proceed].)

Because Blue Shield's operative summary judgment motion addressed an issue not raised by the first motion, appellant's reliance on *Bagley v. TRW, Inc.* (1999) 73 Cal.App.4th 1092 [86 Cal.Rptr.2d 909] is unavailing. There, the court determined that the defendant's second summary judgment motion ran

afoul of Code of Civil Procedure section 437c, subdivision (f)(2) because it presented the identical issue and relied on the same facts and law that had been raised in a prior motion for summary adjudication which had been granted in part and denied in part. (*Bagley v. TRW, Inc., supra*, at pp. 1096–1097.) Here, on the other hand, the trial court had no reason to reach the question of whether the operative summary judgment motion relied on the same facts and law presented in the prior motion because the motion targeted an issue—appellant's fraud—not previously asserted.

██ But even if we were to assume that the operative summary judgment motion did not assert a new issue, we would nevertheless conclude that the trial court had inherent authority to reconsider sua sponte its prior order denying Blue Shield's second motion for summary judgment. In *Le Francois v. Goel* (2005) 35 Cal.4th 1094 [29 Cal.Rptr.3d 249, 112 P.3d 636] (*Le Francois*), the California Supreme Court concluded a trial court has the authority to reconsider sua sponte an earlier interim ruling on a motion for summary judgment even though the moving party may not have asserted any new issues or newly discovered facts or law that would support the filing of a second or renewed motion for summary judgment pursuant to Code of Civil Procedure section 437c, subdivision (f)(2) or Code of Civil Procedure section 1008. (*Le Francois, supra*, at pp. 1096–1097, 1105.) The court stated: "We hold that sections 437c and 1008 limit the parties' ability to file repetitive motions but do not limit the court's ability, on its own motion, to reconsider its prior interim orders so it may correct its own errors." (*Id.* at p. 1107.) In so holding, the court added: "We cannot prevent a party from communicating the view to a court that it should reconsider a prior ruling (although any such communication should never be ex parte). We agree that it should not matter whether the 'judge has an unprovoked flash of understanding in the middle of the night' [citation] or acts in response to a party's suggestion. If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief. . . . But a party may not file a written *motion* to reconsider that has procedural significance if it does not satisfy the requirements of section 437c, subdivision (f)(2), or 1008." (*Id.* at p. 1108.)

Notwithstanding this admonition, the court in *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301 [70 Cal.Rptr.3d 691] applied *Le Francois*'s holding to affirm a trial court's order changing its prior ruling even though that change resulted from a party improperly filing a Code of Civil Procedure section 1008 motion for reconsideration. (*In re Marriage of Barthold, supra*, at pp. 1303–1304, 1308–1309.) The court reasoned "that the trial court's inherent authority to correct its errors applies even when the trial court was prompted to reconsider its prior ruling by a motion filed in violation of section 1008." (*Id.* at pp. 1303–1304.) According to the court, "*Le Francois* simply requires that the trial court reconsider a prior ruling based on its own realization that the

ruling was erroneous, and not based upon a determination that the motion to reconsider should itself be granted on its merits." (*Id.* at p. 1308.)

Here, the record supports the conclusion that the trial court effectively sua sponte reconsidered its prior order denying Blue Shield's second motion for summary judgment. In the prior order, the trial court indicated that it would consider whether Blue Shield was entitled to summary judgment on the ground that the undisputed evidence satisfied the elements of fraud. It characterized Blue Shield's second summary judgment motion as seeking adjudication on the theory that appellant's concealment of material information entitled Blue Shield to rescind coverage. Finding that theory insufficient, the trial court explained: "If the Court correctly understands the interplay between *Ticconi* and Sections 10113 and 10381.5, rescission for fraud in the application may still be permissible, even if the application was not attached to or endorsed on the policy. However, this requires proof of fraud." Though the trial court observed that the unstated inferences from the evidence identified in the separate statement might support the existence of fraud, "the Court believes that each of the elements of fraud (as enumerated in CACI 1900) must be set forth explicitly in the Separate Statement. In this sense, Blue Shield's Separate Statement is insufficient to support summary judgment or summary adjudication."

Thus, at the time it denied the second summary judgment motion, the trial court had already determined that it would reconsider its order if Blue Shield could demonstrate that there was no triable issue of fact as to each element of fraud. That reconsideration may have been prompted by a motion filed in violation of Code of Civil Procedure section 437c, subdivision (f)(2) did not alter the trial court's inherent authority to reconsider its prior order denying summary judgment. (*In re Marriage of Barthold, supra*, 158 Cal.App.4th at pp. 1303–1304.)

■ We likewise reject appellant's argument that the summary judgment motion improperly addressed an issue which was not raised by the pleadings. It is well established that the pleadings determine the scope of relevant issues on a summary judgment motion. (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885 [164 Cal.Rptr. 510, 610 P.2d 407], revd. on other grounds (1981) 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882]; *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508].) Here, though it did not employ the term "fraud," Blue Shield adequately pleaded the issue of fraud in its answer, asserting as affirmative defenses that "[p]laintiff made numerous material misstatements and omissions in her application to Defendant" upon which Blue Shield relied and did not discover the falsity thereof until the time of rescission. Moreover, in its cross-complaint Blue Shield similarly sought declaratory relief on the ground that "Cross-Defendant made material false representations and omitted material facts in her Application concerning her medical condition and history.

Had Cross-Defendant provided information that was complete and accurate, [Blue Shield] would not have entered into the Contract. Based on the circumstances detailed above, [Blue Shield] rightfully rescinded the Contract."

In any event, even if Blue Shield had not pleaded the issue of appellant's fraud as an affirmative defense, the court in *Cruey v. Gannett Co.* (1998) 64 Cal.App.4th 356, 367 [76 Cal.Rptr.2d 670], suggested that an affirmative defense may be raised for the first time in a summary judgment motion absent a showing of prejudice. Addressing the issue of privilege, the court stated: "Given the long-standing California court policy of exercising liberality in permitting amendments to pleadings at any stage of the proceedings [citation] and of disregarding errors or defects in pleadings unless substantial rights are affected [citation], we believe that a party should be permitted to introduce the defense of privilege in a summary judgment procedure so long as the opposing party has adequate notice and opportunity to respond." (*Ibid.*; see also *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1664 [42 Cal.Rptr.2d 669] [affirming summary judgment motion directed to both pleaded and unpleaded theories].) Because appellant had sufficient notice of and an opportunity to respond to Blue Shield's motion asserting that her fraud justified rescission of the policy, she suffered no prejudice by responding to the motion on the merits.

III. *The Trial Court Properly Granted Summary Judgment.*

 A. *The Undisputed Evidence Established That Blue Shield Was Entitled to Rescind the Policy by Reason of Appellant's Material Misrepresentations and Omissions.*

As a matter of law, the trial court determined that Blue Shield was entitled to rescind coverage if the undisputed evidence showed that appellant committed fraud by making material misrepresentations or omissions concerning her medical history or condition to Blue Shield before it issued the policy. Turning to the evidence submitted in connection with the motion, the trial court found "that the undisputed facts establish each element of fraud and deceit under California law, with respect to [appellant's] misrepresentations when applying for coverage with Blue Shield Life." We agree.

"Governing law permits an insurer to rescind a policy when the insured has misrepresented or concealed material information in connection with obtaining insurance." (*TIG Ins. Co. of Michigan v. Homestore, Inc.* (2006) 137 Cal.App.4th 749, 755–756 [40 Cal.Rptr.3d 528].) According to *Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 468 [25 Cal.Rptr.3d 627] (*Mitchell*), the Insurance Code provides a "statutory framework that imposes 'heavy burdens of disclosure' 'upon both parties to a

contract of insurance, and any material misrepresentation or the failure, whether intentional or unintentional, to provide requested information permits rescission of the policy by the injured party.' [Citation.]" (*Id.* at p. 468.) Discussing the purpose of the statutory scheme, the court stated: "Requiring full disclosure at the inception of the insurance contract and granting a statutory right to rescind based on concealment or material misrepresentation at that time safeguard the parties' freedom to contract. '[An insurance company] has the unquestioned right to select those whom it will insure and to rely upon him who would be insured for such information as it desires as a basis for its determination to the end that a wise discrimination may be exercised in selecting its risks.' [Citation.]" (*Id.* at pp. 468–469.)

■ Illustrating the application of these provisions, the court in *Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 825–826 [44 Cal.Rptr.2d 56] (*Lunardi*), affirmed summary judgment in favor of an insurer that rescinded coverage after it discovered the insured had concealed material information about his medical condition during the application process. The court outlined the multiple Insurance Code provisions that supported its determination: "Section 331 provides: 'Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.' Concealment is defined in section 330 as '[n]eglect to communicate that which a party knows, and ought to communicate.' In addition, section 332 states: 'Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining.' " (*Lunardi, supra*, at p. 825.) Rejecting the insured's argument that these statutes did not impose on him a duty to disclose his medical condition because the insurer had other means available to obtain that information, the court continued: "Section 332 does not require the insurer to take all possible measures to reveal undisclosed conditions. Furthermore, the insured's obligation to report misstatements in the application is based on the duty of good faith and fair dealing imposed on both parties. [Citations.] [The insured's] failure to disclose his diagnosis and thereby correct the misstatements in his application clearly constitutes a breach of this continuing duty and provides a basis for rescission under section 332." (*Id.* at p. 826.) The court added that summary judgment was equally proper on the ground of misrepresentation, citing section 359 which provides: " 'If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false.' " (*Lunardi, supra*, at p. 827.)

■ "Courts have applied Insurance Code sections 331 and 359 to permit rescission of an insurance policy based on an insured's negligent or inadvertent failure to disclose a material fact in the application for insurance [citations] . . . ." (*Mitchell, supra*, 127 Cal.App.4th at p. 469; see, e.g., *TIG Ins.*

*Co. of Michigan v. Homestore, Inc., supra*, 137 Cal.App.4th at pp. 756–759 [affirming summary judgment on the ground that material misrepresentations in insurance application justified insurer's rescission of policy]; *Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 180–182 [243 Cal.Rptr. 639] [affirming summary judgment, holding that insured's concealment of material information supported insurer's rescission of policy].)

The same result is compelled here. The undisputed evidence established that appellant made material misrepresentations and omissions on the application regarding her medical condition and treatment. Appellant responded in the negative to the inquiries in the "Medical History" portion of the application, when in fact appellant had suffered from chronic back problems throughout 2005 and previously. Appellant represented that her last doctor's visit had occurred three years earlier, when in fact she had seen and received significant treatment from Dr. Nation in February 2005, and she had seen Dr. Rockenmacher at least 17 times between February and May 2005, including the day she signed the application. Finally, appellant represented that she had not taken or been directed to take any prescription medications in the past year, when in fact she had filled at least 10 prescriptions for four different medications and had received two steroid injections as well as an oral steroid.

■ The undisputed evidence further established that appellant's misrepresentations and omissions were material. (See § 334 ["Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."]; *Mitchell, supra*, 127 Cal.App.4th at p. 468.) "[M]ateriality, as Insurance Code section 334 tells us, must be determined 'solely by the probable and reasonable influence' which the admittedly undisclosed information would have had upon [the insurer's] decision to issue the policy. This is a *subjective* test; the critical question is the effect truthful answers would have had on Imperial, not on some 'average reasonable' insurer." (*Imperial Casualty & Indemnity Co. v. Sogomonian, supra*, 198 Cal.App.3d at p. 181.) In support of summary judgment, Blue Shield offered Krebs's declaration that she would not have approved appellant for coverage had she known about appellant's medical history, as well as the declarations of senior underwriter Paula Wells who averred: "According to Blue Shield Life's underwriting guidelines, the medical conditions reflected in [appellant's] medical and pharmacy records, if disclosed on her Application, would have rendered [appellant] ineligible for enrollment in any Blue Shield Life IFP product." ■ Although "the trier of fact is not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed" (*Imperial Casualty & Indemnity Co. v. Sogomonian, supra*, at p. 181), Blue Shield's declarations

satisfied the elements of section 334. Moreover, those declarations constituted the only evidence on the point; appellant offered no evidence to raise a triable issue of fact as to materiality.

■ Rather, appellant asserts that her declaration, in which she averred that she "did not intend to defraud Blue Shield," created a triable issue as to whether she misrepresented or omitted material facts. But "[t]he rule in insurance cases is that a material misrepresentation or concealment in an insurance application, whether intentional or unintentional, entitles the insurer to rescind the insurance policy *ab initio*. [Citations.]" (*West Coast Life Ins. Co. v. Ward* (2005) 132 Cal.App.4th 181, 186–187 [33 Cal.Rptr.3d 319]; see also *Mitchell, supra,* 127 Cal.App.4th at p. 469 [" 'misstatement or conceal-ment of "material" facts is ground for rescission *even if unintentional.* The insurer need not prove that the applicant-insured actually intended to deceive the insurer.' "].) Moreover, the rule is codified in the Insurance Code so that "any material misrepresentation or the failure, whether intentional or uninten-tional, to provide requested information permits rescission of the policy by the injured party." (*Imperial Casualty & Indemnity Co. v. Sogomonian, supra,* 198 Cal.App.3d at pp. 179–180, fn. omitted; see §§ 331, 360.) Accordingly, evidence showing that appellant lacked any intent to defraud failed to create a triable issue of fact.

■ On the basis of the governing law and the undisputed evidence, we find no basis to disturb the trial court's conclusion: "[Appellant's] application contained material misrepresentations and omissions concerning her medical history and conditions, medications taken, and recent physician visits. Had [appellant] accurately and completely disclosed these matters, she would have been denied coverage. Based on the undisputed facts, Blue Shield Life was and is entitled to rescind [appellant's] policy."

B. *Insurance Code Sections 10113 and 10381.5 Did Not Bar Rescission.*

Appellant asserts that even if the undisputed evidence established that she misrepresented and omitted material information on her application, Blue Shield is precluded from rescinding the policy because it neither attached nor endorsed the application to the policy. She relies on *Ticconi, supra,* 160 Cal.App.4th 528, where the court reversed an order denying class certification on the ground that individual issues of fraud would not predominate over common issues related to liability. It reached this conclusion by construing

sections 10113[2] and 10381.5[3] to "preclude an insurer from raising the defense of fraud based on statements that an insured made in an application for insurance if the application had not been attached to or endorsed on the policy when issued [citations]." (*Ticconi, supra,* at p. 534.)

There, the insured alleged that Blue Shield issued his policy without either attaching or endorsing a copy of his application and that therefore he was not bound by any representation made in the application. (*Ticconi, supra,* 160 Cal.App.4th at p. 535.) He further alleged Blue Shield had rescinded multiple policies that did not have the applications attached to or endorsed on the policies and that such rescission violated sections 10113 and 10381.5 and was an unfair business practice.[4] (*Ticconi, supra,* at pp. 535–536.) Determining that the insured had stated a claim suitable for class certification, the court summarized the pertinent statutes, stating that "section 10113 prohibits incorporating applications into a disability insurance policy by reference unless they are endorsed upon or attached to the policies when issued. [Citation.] If a copy of an application for a policy is not attached to or endorsed on the policy when the policy is issued, then the insured is not bound by statements made in that application. [Citation.]" (*Ticconi, supra,* at p. 540, fn. omitted.) Turning to legislative history, the court observed that section 10381.5 "was designed to 'repeat[] a provision of section 10113 . . .' [citation]" and separately established that when a copy of the application is neither attached to nor endorsed on the policy the insured is not bound by any statement made in the application. (*Ticconi, supra,* at p. 540.) Further, citing *Telford v. New York Life Ins. Co.* (1937) 9 Cal.2d 103 [69 P.2d 835], the court determined that "[a]nother consequence of violating sections 10113 and

---

[2] Section 10113 provides: "Every policy of life, disability, or life and disability insurance issued or delivered within this State . . . by any insurer doing such business within this State shall contain and be deemed to constitute the entire contract between the parties and nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application or other writings, of either of the parties thereto or of any other person, unless the same are indorsed upon or attached to the policy; and all statements purporting to be made by the insured shall, in the absence of fraud, be representations and not warranties. Any waiver of the provisions of this section shall be void."

[3] Section 10381.5 provides: "The insured shall not be bound by any statement made in an application for a policy unless a copy of such application is attached to or endorsed on the policy when issued as a part thereof. If any such policy delivered or issued for delivery to any person in this State shall be reinstated or renewed, and the insured or the beneficiary or assignee of such policy shall make written request to the insurer for a copy of the application, if any, for such reinstatement or renewal, the insurer shall within 15 days after the receipt of such request at its home office or any branch office of the insurer, deliver or mail to the person making such request, a copy of such application. If such copy shall not be so delivered or mailed, the insurer shall be precluded from introducing such application as evidence in any action or proceeding based upon or involving such policy or its reinstatement or renewal."

[4] Sections 10113 and 10381.5 apply only to life and disability insurance policies; health insurance is a type of disability insurance. (§ 106; *Ticconi, supra,* 160 Cal.App.4th at p. 539, fn. 7.)

10381.5 is that the insurer may not invoke *the defense* of misrepresentations in or omissions from the unattached and unendorsed application." (*Ticconi, supra*, at p. 541.) Thus, it concluded that the insured's claim that Blue Shield "fail[ed] to attach applications to or endorse them on disability policies when issued and later engag[ed] in postclaims underwriting by holding insureds to statements in those unattached and unendorsed applications as grounds for voiding or rescinding the policies" alleged unlawful conduct that could serve as a predicate unlawful business practice in violation of Business and Professions Code section 17200. (*Ticconi, supra*, at p. 542.)

In its order granting summary judgment, the trial court here declined to interpret sections 10113 and 10381.5 so as to preclude rescission for appellant's material misrepresentations and omissions. It ruled: "[T]his Court has determined that whether Blue Shield Life in fact attached or endorsed the Application does not impact its ability to rescind in this case, where the only reasonable inference from the undisputed facts is that [appellant's] misrepresentations were the result of both fraud and deceit on her part. *See, e.g.*, Ins. Code, § 10113 (which specifically notes that it applies 'in the absence of fraud'). *See also* Civ. Code, § 1692 ('If in an action or proceeding a party seeks relief based upon rescission, the court . . . may otherwise in its judgment adjust the equities between the parties.'); *Ticconi, supra*, 160 Cal.App.4th 528, 545–46 (permitting court to consider the insured's application misstatements regardless whether the insurer attached or endorsed the application when determining equitable remedies)." We agree with the trial court's conclusion that neither section 10113 nor section 10381.5 barred summary judgment in this instance.

 Though not cited by the *Ticconi* court, *Metzinger v. Manhattan Life Ins. Co.* (1969) 71 Cal.2d 423 [78 Cal.Rptr. 463, 455 P.2d 391] (*Metzinger*) explained that section 10113 does not apply to a situation where an insurer seeks to rescind a policy because of fraudulent misrepresentations made by the insured. There, the insured represented in his application that he was in good health, had suffered no chronic disease and had not consulted with any physician during the past two years. After the insured died, the insurer discovered the falsity of those representations and the trial court ruled that the insured's misrepresentations vitiated coverage under the policy. (*Metzinger, supra*, at pp. 426–427.) On appeal, the beneficiaries argued that, pursuant to section 10113, the application should not have been admitted into evidence because it was not attached to the policy. (*Metzinger, supra*, at p. 427.) Though the Court determined that section 10113 applied to an insurance "policy" rather than to the certificate of group insurance that was at issue, it stated: "However, even if it be assumed that section 10113 does apply to group life insurance, it may be noted that defendant does not seek, in violation of its provisions, to 'incorporate' anything whatever into the policy 'by reference to any . . . application or other writings' not indorsed upon or

attached to the policy; rather defendant asserts that it was in reliance upon [the insured's] false health representations that it was induced to issue insurance to him. (See §§ 350, 443.)" (*Metzinger, supra,* at p. 427, fn. omitted.)

██ So too here. In its summary judgment motion, Blue Shield did not seek to incorporate any document into the policy by reference. Rather, it sought to demonstrate that, in accordance with sections 331 and 359, it was entitled to rescind the policy. "We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole. [Citations.]" (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487 [30 Cal.Rptr.3d 823, 115 P.3d 98].) ██ Notably, section 10113 does not state that it applies notwithstanding any other provision of law. Instead, it expressly applies "in the absence of fraud" and thus may be harmonized with other Insurance Code provisions to permit an insurer to rescind a policy where the insured fraudulently conceals or misrepresents material information in the application. (§ 10113.)

Section 10381.5 must likewise be harmonized with the entirety of the Insurance Code. The statute was intended to repeat part of section 10113 and establish a separate consequence for a violation of section 10113. (*Ticconi, supra,* 160 Cal.App.4th at p. 540.) In contrast to section 10113, which applies to several types of documents that may not be incorporated by reference into a policy unless certain requirements are met, section 10381.5 applies only to the application itself and does not involve the question of incorporation by reference. Instead, it provides that an insured shall not be "bound by" statements in an application unless the application is attached to or endorsed on the policy. (§ 10381.5.) The balance of the statute addresses how an insured may request a copy of the application in the event the policy is being renewed or reinstated, and provides that the consequence of nondelivery following the insured's request is that the application may not be introduced into evidence. (*Ibid.*)

██ A reasonable and commonsense reading of the statute as a whole leads to the conclusion that it expressly contemplates the insured will not necessarily have possession of the application. (E.g., *Doe v. Roman Catholic Bishop of San Diego* (2009) 178 Cal.App.4th 1382, 1388 [101 Cal.Rptr.3d 398] [words of a statute "must be construed in order to achieve a reasonable and commonsense interpretation when viewed in context and in light of the statute's obvious nature and purpose"].) As such, we cannot construe the statute's requirement that the application be "attached to or endorsed on" the policy to require physical attachment in all instances. (§ 10381.5.) Both the application and the policy here expressly and repeatedly state that the information provided in the application forms the basis for the policy's

coverage. Construing section 10381.5 to require that, in addition to these provisions, the application be physically attached to the policy in order for Blue Shield to rely on it would render the "endorsed on" language meaningless. (E.g., *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 [41 Cal.Rptr.2d 220, 895 P.2d 56] [statutory interpretations that render terms meaningless or inoperative are to be avoided].) Moreover, our construction comports with the additional general principle that the Legislature's use of the disjunctive "or" "indicates an intent to designate alternative ways of satisfying the statutory requirements. [Citations.]" (*People v. Loeun* (1997) 17 Cal.4th 1, 9–10 [69 Cal.Rptr.2d 776, 947 P.2d 1313]; accord, *Houge v. Ford* (1955) 44 Cal.2d 706, 712 [285 P.2d 257] ["In its ordinary sense, the function of the word 'or' is to mark an alternative such as 'either this or that . . . .' "].)

Though the *Ticconi* court expressly declined to determine whether Blue Shield's practice of cross-referencing the application and the policy within one another satisfied the endorsement requirement, it relied on *Telford v. New York Life Ins. Co., supra,* 9 Cal.2d 103 to broadly conclude that an insurer may never invoke the defense of fraud on the basis of material misstatements or omissions in an unattached and unendorsed application. (*Ticconi, supra,* 160 Cal.App.4th at pp. 540–541 & fn. 9.) There, however, the policy at issue provided "that no statement of the applicant should avoid the policy, or be used in defense to a claim under it, unless it was contained in the written application and a copy of the application endorsed upon *and* attached to the policy when delivered." (*Telford v. New York Life Ins. Co., supra,* at p. 106, italics added.) Because the insured's written misstatement concerning the reason for her prior hospital visits was not included within the portion of the application attached to the policy, the court concluded that the insured's lack of disclosure could not serve as the basis for a defense asserted by the insurer. (*Ibid.*) The Legislature enacted section 10381.5 after the *Telford* decision. (See *Ticconi, supra,* at p. 541, fn. 11.) Given that the Legislature is presumed to know of existing judicial decisions when it enacts legislation (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 642–643 [71 Cal.Rptr.2d 632]), it is evident that the Legislature did not intend to codify the holding in *Telford.* Thus, we decline to adopt the blanket conclusion in *Ticconi* that material misrepresentations and omissions in an application that is not physically attached to a policy may not be relied upon by the insurer to rescind the policy.

■ Even if we were to agree with the *Ticconi* court, the undisputed evidence here established that there were material false representations and omissions beyond those contained in the application. According to Moore's deposition testimony, before the policy was issued Moore verbally represented to Corrington that he and appellant were healthy and did not take any medications. As summarized earlier, the undisputed facts further established

the falsity and materiality of such representations. The Insurance Code provides that a representation may be oral or written (§ 350) and a false material representation entitles the injured party to rescind the policy (§ 359). Though appellant asserts that Moore's representations should not dictate whether Blue Shield can rescind her coverage, section 650 provides any such rescission "shall apply to all insureds under the contract, including additional insureds, unless the contract provides otherwise." In *TIG Ins. Co. of Michigan v. Homestore, Inc., supra,* 137 Cal.App.4th at pages 755 to 756, the court applied this provision to affirm the rescission of a policy as to corporate officers and directors notwithstanding that they neither signed the policy nor were aware that the chief financial officer had submitted materially false information in applying for the policy. Blue Shield was similarly entitled to rescind the policy as to appellant on the basis of Moore's verbal misrepresentations.

### C. *Insurance Code Section 10384 Did Not Bar Rescission.*

In granting summary judgment, the trial court further concluded that the undisputed evidence failed to establish that Blue Shield was precluded from rescinding the policy because it engaged in postclaims underwriting in violation of section 10384. That statute prohibits an "insurer issuing or providing any policy of disability insurance covering hospital, medical, or surgical expenses" from engaging in postclaims underwriting, defined as "the rescinding, canceling, or limiting of a policy or certificate due to the insurer's failure to complete medical underwriting and resolve all reasonable questions arising from written information submitted on or with an application before issuing the policy or certificate." (§ 10384.) The trial court ruled: "Blue Shield Life did not engage in postclaims underwriting for at least two reasons: (1) the undisputed facts establish that Blue Shield Life properly completed its underwriting and resolved all reasonable questions arising from the written information submitted on or with respect to [appellant's] Application; and (2) even if one were to assume that Blue Shield Life had some obligation to contact the providers listed in the Application, [appellant] did not even list the providers who had treated her for the conditions that led to the rescission. Thus, the rescission was not 'due to' (*i.e.,* the result of) any claimed underwriting deficiency."

Relying on *Hailey, supra,* 158 Cal.App.4th 452, appellant contends there were triable issues of fact as to whether Blue Shield reasonably completed the medical underwriting process in this case. We conclude that *Hailey* is both legally and factually inapposite and agree with the trial court that the undisputed evidence showed that Blue Shield conducted a reasonable investigation and its rescission was not due to any failure to resolve reasonable questions arising from the application.

*Hailey* involved an interpretation of Health and Safety Code section 1389.3, which applies exclusively to health care service plans licensed and regulated by the Department of Managed Health Care. (*Hailey, supra,* 158 Cal.App.4th at p. 463.) The statute is phrased similarly to section 10384, but does not apply upon a showing of willful misrepresentation. (Health & Saf. Code, § 1389.3.) In *Hailey,* the insured completed a Blue Shield application, mistakenly believing the application sought information only about her—not her husband and son for whom she also sought coverage; she also incorrectly underestimated her husband's weight.[5] (*Hailey, supra,* at pp. 460–461.) After Blue Shield extended coverage to the insured and her family, the insured's husband was admitted to the hospital for stomach problems and later became completely disabled as the result of an automobile accident. (*Id.* at p. 461.) Following the first hospitalization, a Blue Shield investigation revealed that the insured had misrepresented and omitted material information concerning her husband's medical condition. (*Ibid.*) Blue Shield rescinded the policy. (*Id.* at pp. 461–462.) The trial court granted summary judgment in favor of Blue Shield on the insured's complaint for breach of contract and breach of the implied covenant of good faith and fair dealing and on Blue Shield's declaratory relief cross-complaint. (*Ibid.*)

The appellate court reversed, concluding that there were triable issues of fact as to whether Blue Shield engaged in postclaims underwriting and whether the insured willfully misrepresented her husband's medical condition. It explained that Blue Shield was operating as a health care service plan subject to the Knox-Keene Health Care Service Plan Act of 1975 (Knox-Keene Act; Health & Saf. Code, § 1340 et seq.), which was designed "to 'ensure the best possible health care for the public at the lowest possible cost by transferring the financial risk of health care from patients to providers.' (§ 1342, subd. (d).)" (*Hailey, supra,* 158 Cal.App.4th at p. 463.) Consistent with that goal, the Legislature enacted Health and Safety Code section 1389.3 to prevent providers from shifting the financial risk of health care back to patients. (*Hailey, supra,* at p. 463.) Given these particular policy considerations, the court determined that "to effectuate section 1389.3's purpose, and in light of the equitable nature of rescission, we interpret 'medical underwriting' to require a plan to make reasonable efforts to ensure a potential subscriber's application is accurate and complete." (*Hailey, supra,* at p. 469.) The court rejected Blue Shield's argument that it could rely on the truthfulness of an applicant's responses as part of its medical underwriting

---

[5] We agree with the *Hailey* court's observation that the Blue Shield application is far from a model of clarity, as the medical information checklist section of the application provides no separate answer spaces for each prospective insured. (*Hailey, supra,* 158 Cal.App.4th at p. 464.) Nonetheless, while the evidence in *Hailey* established that this format helped to cause the insured to mistakenly omit material information, there was no evidence presented here suggesting that the application itself induced appellant to omit information about her medical condition and treatment.

process, explaining that while such a position was consistent with section 331—permitting an insurer to rescind a policy for concealment—"the Knox-Keene Act does not have a counterpart to Insurance Code section 331." (*Hailey, supra,* at p. 470.) Given this qualification, we construe the *Hailey* court's medical underwriting requirements to be limited to health care service plans subject to the Knox-Keene Act.[6]

But even if we were to apply *Hailey* to the evidence offered on summary judgment, we would agree with the trial court that "the undisputed facts establish that Blue Shield Life's underwriting process, as applied here, included appropriate steps to ensure the accuracy and completeness of [appellant's] Application." Multiple Blue Shield employees contacted Moore and appellant to obtain information missing from the application as well as to inquire about specific responses on the application that raised concerns. Blue Shield specifically inquired about appellant's last doctor's visit and appellant disclosed only that she had seen her primary care physician, Dr. Pita, in January 2002 for the flu. It also requested additional information about recent chiropractic visits referenced on the application, and Moore responded that the response related solely to him but was erroneous, as his last chiropractic visit was six years earlier and he was not having any current back problems. Blue Shield also confirmed in its own database that appellant had no prior claims history. Only after making these additional inquiries of Moore and appellant did Blue Shield issue coverage.

Blue Shield's efforts stand in contrast to those in *Hailey*, where the court commented that rescission could have been averted if the Blue Shield underwriter had inquired whether the insured had included information about all family members and had contacted the family's primary care physician or previous insurer. (*Hailey, supra,* 158 Cal.App.4th at p. 467.) Here, Blue Shield made specific inquiries about both Moore's and appellant's previous doctors' visits in an effort to confirm the two had disclosed all pertinent information. Though appellant finds it significant that Blue Shield underwriter Krebs testified that she "would have done more" if she had obtained medical records from Dr. Pita and learned that appellant's last visit occurred in 2003 and not 2002 as represented, we agree with the trial court that this testimony failed to create a triable issue. Appellant proffered no evidence to show that a review of Dr. Pita's medical records would have disclosed any information about the treatment that appellant received from Dr. Nation and Dr. Rockenmacher. There was no evidence that Dr. Pita had referred appellant to those doctors or

---

[6] We likewise conclude that the overriding public policy of protecting injured third parties, which guided the court in *Barrera v. State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674], is not present here. There, the court determined that because an automobile insurer owes a direct duty to members of the public, it is required to conduct a reasonable investigation of insurability—i.e., check the insured's Department of Motor Vehicles record—at or near the time it issues a policy. (*Id.* at pp. 675–679.)

that Dr. Pita was even aware she was seeing them. Under these circumstances, appellant failed to create a triable issue of fact as to whether Blue Shield engaged in postclaims underwriting in violation of section 10384, because she offered no evidence indicating that Blue Shield's rescission was "due to" its failure to complete the medical underwriting process and "resolve all reasonable questions arising from written information submitted" in connection with the application prior to issuing the policy. (§ 10384.)

### D. *No Triable Issue of Fact Remained Concerning Blue Shield's Liability for Bad Faith or Punitive Damages.*

Appellant challenges the trial court's findings that the undisputed evidence mandated summary judgment encompassing appellant's claim for breach of the implied covenant of good faith and fair dealing and her corresponding prayer for punitive damages. As summarized in *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 345 [108 Cal.Rptr.2d 776], a " ' "breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself," and it has been held that " '[b]ad faith implies unfair dealing rather than mistaken judgment. . . .' [Citation.]" [Citation.]' [Citation.]" Thus, an insurer's bad judgment or negligence is insufficient to establish bad faith; instead, the insurer must engage in " 'a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.' " (*Id.* at p. 346.) The ultimate test is whether the insurer's conduct was unreasonable. (*Ibid.*; accord, *Gourley v. State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121, 127 [3 Cal.Rptr.2d 666, 822 P.2d 374]; *Nager v. Allstate Ins. Co.* (2000) 83 Cal.App.4th 284, 288 [99 Cal.Rptr.2d 348].) "While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence. [Citation.]" (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co., supra*, at p. 346; *Carlton v. St. Paul Mercury Ins. Co.* (1994) 30 Cal.App.4th 1450, 1456 [36 Cal.Rptr.2d 229].)

As aptly stated in *Nager v. Allstate Ins. Co., supra*, 83 Cal.App.4th at page 288: "Not every first party insurance claim is transmogrified into a bad faith suit simply because an insurer questions the amount of a bill before paying it. To give rise to tort liability for bad faith, the insurer's conduct not only must be erroneous but 'unreasonable' or 'without proper cause' as well. [Citations.]" Here, the undisputed evidence established that Blue Shield inquired after appellant sought coverage for major surgery and at that point learned that appellant had misrepresented and omitted material information in her application. The trial court properly concluded that appellant's conduct

entitled Blue Shield to rescind the policy and that there was no statutory bar to rescission. Under these circumstances, appellant failed to raise a triable issue showing that Blue Shield acted unreasonably in rescinding the policy and refusing to pay contract benefits to appellant. Accordingly, summary judgment was properly granted on appellant's claim for breach of the implied covenant of good faith and fair dealing.

## DISPOSITION

The judgment is affirmed. Blue Shield is entitled to its costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.

A petition for a rehearing was denied February 16, 2010, and appellant's petition for review by the Supreme Court was denied April 28, 2010, S180631.