**Marshall SALKIN and Ellen Salkin, Plaintiffs,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION; USAA Life Insurance Company; and Does 1 through 50, Inclusive, Defendants.**

**Case No. EDCV 10–01322 VAP (OPx).**

United States District Court, C.D. California.

Dec. 19, 2011.

---

Evangeline F. Grossman, Joel A. Cohen, Travis Murray Corby, William M. Shernoff, Shernoff Bidart Darras Echeverria LLP, Claremont, CA, for Plaintiffs.

Becky J. Belke, Margaret Levy, Manatt Phelps & Phillips LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**[Motion filed on November 7, 2011]**

VIRGINIA A. PHILLIPS, District Judge.

Plaintiff Dr. Marshall Salkin, when he learned of his terminal prostate cancer, sought an accelerated death benefit under a life insurance policy he bought from Defendant USAA Life Insurance Company ("USAA"). USAA did not pay the benefit; instead, it rescinded Dr. Salkin's policy on the basis that Dr. Salkin made misrepresentations when he applied for the policy. Dr. Salkin and his wife, Plaintiff Ellen Salkin (the beneficiary of Dr. Salkin's policy), sued USAA, contending USAA re-

scinded the policy wrongfully. USAA filed the instant Motion for Summary Judgment ("Motion") (Doc. No. 32) on November 7, 2011, arguing it was within its rights to rescind Dr. Salkin's policy, based on significant misrepresentations Dr. Salkin made in his application.

The Court concludes Dr. Salkin made material misrepresentations in his life insurance application; consequently, USAA was within its rights to rescind Dr. Salkin's policy. As a result, the Salkins' claim for breach of duty of good faith and fair dealing fails as a matter of law.[1] Accordingly, for the reasons discussed below, the Court GRANTS USAA's Motion for Summary Judgment.

## I. BACKGROUND

### A. Preliminary Evidentiary Issues

Before recounting the undisputed facts, the Court takes up the parties' objections to the evidence. The Salkins posed only one evidentiary objection (*see* Doc. No. 41), *i.e.*, the medical records submitted as Exhibit F to the Declaration of Tammy Koenig are inadmissible hearsay under the Federal Rules of Evidence, and further, are inadmissible as "records containing opinions concerning a person's mental state" under California law. The Court sustains the hearsay objection pursuant to the Federal Rules of Evidence. Although anything Dr. Salkin told his physicians for the purpose of diagnosis is hearsay subject to an exception, *see* Fed.R.Evid. 803(4), the medical records in which those statements (and other information) are now contained are also hearsay, and without "the testimony of the custodian or another qualified witness" that the records were made contemporaneously with Dr. Salkin's visits

and in the regular course of business, Fed. R.Evid. 803(6), the medical records fall outside the business records exception to the hearsay rule. As USAA failed to provide the declaration of a custodian as to the provenance of the medical records, to the extent USAA's Motion relies upon Dr. Salkin's medical records, it may not do so in a manner that assumes their accuracy.

Next, the Court turns to USAA's objections (Doc. No. 46), chiefly that the Salkins failed to authenticate properly virtually all of the evidence submitted in opposition to summary judgment. The Court's Standing Order (Doc. No. 8), sent to all parties on September 2, 2010, states (in relevant part):

> Parties offering evidence in support of, or in opposition to, a Rule 56 motion must cite to specific page and line numbers in depositions and paragraph numbers in affidavits. *Furthermore, such evidence must be authenticated properly.* The Court directs the parties to become familiar with *Orr v. Bank of America, NT & SA,* 285 F.3d 764 (9th Cir.2002).

(emphasis added).

*Orr* deals extensively with the subject of proper authentication of documents submitted in conjunction with summary judgment proceedings, which "must be 'attached to an affidavit that meets the requirements of Fed.R.Civ.P. 56[ (c)(4) ] and the affiant must be a person through whom the exhibits could be admitted into evidence.'" 285 F.3d at 774 (quoting *Canada v. Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987)).

Here, the Salkins seek to admit various documents based on the declaration of

---

1. The Salkins also seek relief from rescission under California Civil Code § 1692, but it is undisputed USAA returned Dr. Salkin's premium payments when it rescinded his policy, thereby putting the Salkins back in the same

position from which they started. (*See* Ex. G to Koenig Decl. (Doc. No. 52–8) at 181.) Moreover, the Salkins did not oppose USAA's Motion for Summary Judgment on this claim.

their counsel that the documents are authentic. (*See, e.g.* Corby Decl. (Doc. No. 53–1) ¶ 8.) To make such a declaration effectively, however the authenticating witness must have personal knowledge that the document is what it purports to be, *e.g.*, because he wrote it, signed it, used it, or saw others do so. *Orr*, 285 F.3d at 774 n. 8. There is no indication that Corby, the Salkins' attorney, has personal knowledge that (for example) what he declares is an electronic mail message ("email") between two USAA employees is actually a true and correct copy of that email.

Of course, a party may authenticate a document by virtue of the fact the document was produced in discovery "when the party identifies who produced the document, or if the party opponent admits to having produced it." *Barefield v. Bd. of Trustees of Cal. State Univ., Bakersfield*, 500 F.Supp.2d 1244, 1257–58 (E.D.Cal. 2007) (citing *Orr*, 285 F.3d at 777–78). While it appears from the Bates stamps on the proffered documents that USAA produced them, Corby did not so declare; consequently, the documents may not be authenticated by production.

Nevertheless, the Court overrules USAA's objections. To the extent USAA proffered some of the same evidence as have the Salkins, "[o]nce evidence has been authenticated by one party, it has been authenticated with regard to all parties," *Barefield*, 500 F.Supp.2d at 1258 (citing *Orr*, 285 F.3d at 775–76), and in any event, USAA does not actually contest the authenticity of the evidence at issue, just the Salkins' failure to authenticate it properly. *See Metro–Goldwyn–Mayer Studios, Inc. v. Grokster*, 454 F.Supp.2d 966, 972 (C.D.Cal.2006) (citing *Maljack Prods.,*

*Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n. 12 (9th Cir.1996)) (holding that an objection to a party's failure to authenticate documents, without a corresponding denial of the documents' authenticity, is insufficient to exclude documents produced in discovery by the objecting party).

Having thus dispensed with the parties' evidentiary objections, the Court now turns to the facts of the case before it.

## B. Factual Background

Dr. Salkin, a retired Navy commander and physician, first applied for a life insurance policy from USAA in September 2007. (*See* Koenig Decl. (Doc. No. 52) ¶ 2.) Based on Dr. Salkin's representation in a telephone interview that his father died of a heart attack, and an electrocardiogram ("EKG")—performed at USAA's request—that showed Dr. Salkin had a right bundle branch block,[2] USAA offered Dr. Salkin a policy at an increased premium. (Koenig Decl. ¶ 2.) Dr. Salkin declined the offer. (*Id.* ¶ 3.) In May 2008, Dr. Salkin applied again, but because of the amount of time that had elapsed since his first application, he was required to undergo new laboratory tests, and to submit to another telephone interview. (*Id.* ¶¶ 4–5.)

The following relevant colloquies occurred in the 2008 telephone interview:

Interviewer: And have you ever consulted with a health care provider for a seizure, paralysis, stroke, depression, anxiety or other mental or nervous system disorder?

Dr. Salkin: No.

. . .

---

**2.** "Bundle branch block is a condition in which there's a delay or obstruction along the pathway that electrical impulses travel to make your heart beat. The blockage may occur on the pathway that sends electrical impulses to the left or the right side of your heart." *Bundle Branch Block: Definition,* http://www.mayoclinic.com/health/bundle-branch-block/DS00693 (last visited Dec. 5, 2011).

Interviewer: Chest pain, high blood pressure, murmur, heart attack or other heart or blood vessel disorder?

Dr. Salkin: Okay, I have a history of high blood pressure.

. . .

Interviewer: And what is the name of the doctor or facility named that would have a record for this?

Dr. Salkin: Let's see, I'm a doctor so, I doctor myself.

Interviewer: So you have your own medical records for your high blood pressure?

Dr. Salkin: I don't have any records, no.

. . .

Interviewer: Within the past five years, have you had an electrocardiogram, x-ray or any other diagnostic tests or procedure that was—

Dr. Salkin: Yeah, I did an EKG to my insurance physical.

. . .

Interviewer: Any other diagnostic tests or procedure?

Dr. Salkin: No.

. . .

Interviewer: And have you consulted a health care provider for any reason not previously disclosed?

Dr. Salkin: No.

. . .

Interviewer: And some of your answers indicate that USAA Life Insurance Company will need to obtain a copy of your medical records to better evaluate your application, and I will now—

Dr. Salkin: I don't have any medical records.

(Ex. B to Belke Decl. (Doc. No. 51) at 14–22.)

Dr. Salkin then underwent another physical examination and laboratory tests (Koenig Decl. ¶ 7); based on the information gleaned from the examination, tests, and his interview, Dr. Salkin was offered a "10 year level term life insurance policy at a Table B rating, with a face amount of $500,000." (*Id.* ¶ 8.) [3] Dr. Salkin's policy contained a clause by which USAA promised:

> not [to] contest this policy based on statements made in an application after this policy has been in effect during the insured's lifetime for 2 years from the Effective Date.... While this policy is contestable, [USAA] may rescind the policy or deny a claim on the basis of a material misstatement in the application.

(Ex. B to Koenig Decl. at 101.)

In November 2009, Dr. Salkin was diagnosed with stage IV prostate cancer. (Ex. C to Koenig Decl. at 122–28.) In December, he submitted a claim under his USAA life insurance policy for a $250,000 accelerated death benefit. (*Id.*) In conjunction with that claim, Mrs. Salkin faxed USAA a document containing, among other things, the name of Dr. Salkin's health insurer. (Ex. D to Koenig Decl.) As Dr. Salkin's claim came within two years of the effective date of his policy, *i.e.*, during the policy's contestability period, USAA conducted a "routine contestable investigation" (Koenig Decl. ¶ 14), during which it requested a list of claims Dr. Salkin submitted to his health insurer (Koenig Decl. ¶ 15).

Dr. Salkin's health insurer responded with a list of claims for payment to physicians including Dr. Hamid R. Salari–Namin, Dr. Andrew S. Janik, and Dr. Rysz-

---

**3.** Salkin disputes this fact based on an internal USAA communication, which states "[Salkin] first applied with us September 2007 and based on reported history of positive family history and our routine ecg showing CRBBB a table B was assessed. A final counteroffer was made 11/8/07." (Ex. G. to Corby Decl. (Doc. No. 53–3).) Nothing about this statement contradicts USAA's proffered fact.

ard Skulski (Ex. E to Koenig Decl.), prompting USAA to request medical records from those doctors (Koenig Decl. ¶ 17). After receiving the records, USAA concluded that Dr. Salkin made material misrepresentations in his application for health insurance, returned his premiums, and rescinded his policy. (*See* Ex. G to Koenig Decl.)

This lawsuit, charging that USAA had no right to rescind Dr. Salkin's policy, followed. Having engaged in discovery, USAA now moves for summary judgment on all three claims made against it, *i.e.:* (1) that it breached a contract by rescinding Dr. Salkin's policy; (2) that it concurrently breached the covenant of good faith and fair dealing, and; (3) that its rescission of the policy entitles the Salkins to damages under California Civil Code § 1692. (*See generally* Motion.)

The Salkins filed an Opposition (Doc. No. 36), arguing USAA waived its right to rescind Dr. Salkin's policy by not underwriting it properly in the first place. (Opp'n at 8–16.) They further argue Dr. Salkin made no misrepresentations, or alternatively, any misrepresentations were immaterial. (*Id.* at 16–20.) The Salkins also contend that USAA has engaged in what amounts to impermissible post-claim underwriting. (*Id.* at 20–22.) USAA filed a Reply (Doc. No. 43), and this matter is now ripe for decision under the following legal standard.

## II. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998); *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Instead, the moving party's burden is met by pointing out there is an absence of evidence supporting the non-moving party's case. *Id.*

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial,* 14:144. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (9th Cir.2010) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). "The non-moving party must do more than show there is

some 'metaphysical doubt' as to the material facts at issue." *In re Oracle*, 627 F.3d at 387 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991); *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

## III. DISCUSSION

USAA can only prevail on its Motion for Summary Judgment if it shows that it rescinded Dr. Salkin's policy rightfully, because there is no genuine issue of fact as to whether Dr. Salkin made material misrepresentations when he applied for his insurance policy. *See* Cal. Ins.Code § 331 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."); *Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*, 181 Cal. App.4th 60, 75–77, 103 Cal.Rptr.3d 906 (2010) (" 'Governing law permits an insurer to rescind a policy when the insured has misrepresented or concealed material information in connection with obtaining insurance.' ") (quoting *TIG Ins. Co. of Mich. v. Homestore, Inc.*, 137 Cal.App.4th 749, 755–56, 40 Cal.Rptr.3d 528 (2006)). USAA carries that burden successfully.

■ The California Insurance Code creates a "statutory framework that imposes 'heavy burdens of disclosure' 'upon both parties to a contract of insurance, and any material misrepresentation or the fail-

ure, whether intentional or unintentional, to provide requested information permits rescission of the policy by the injured party.' " *Mitchell v. United Nat. Ins. Co.*, 127 Cal.App.4th 457, 468, 25 Cal.Rptr.3d 627 (2005) (quoting *Imperial Cas. & Ind. Co. v. Sogomonian*, 198 Cal.App.3d 169, 179–80, 243 Cal.Rptr. 639 (1988)). "Materiality," in turn, "is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." Cal. Ins. Code § 334. In other words, a representation is material if it would have had an effect on USAA's underwriting, and not whether it would have affected the underwriting of "some 'average reasonable' insurer." *Imperial Cas. & Ind. Co.*, 198 Cal.App.3d at 181, 243 Cal.Rptr. 639; *see also Nieto*, 181 Cal. App.4th at 76–78, 103 Cal.Rptr.3d at 920.

■ USAA argues that Dr. Salkin misrepresented his medical history in the application process when he told the interviewer, among other things: (1) he had no medical records; (2) he never consulted a health care provider for assistance with a mental disorder, and; (3) he had no diagnostic tests in the preceding five years, other than an EKG.

Dr. Salkin later admitted, however, to having consulted a psychiatrist for obsessive-compulsive disorder (M. Salkin Dep. 28:10–17, Apr. 15, 2011 (Ex. A to Corby Decl.)), though he thought the problem so minor as not to be worth disclosing to USAA (*see id.* 28:18–22). He also admitted to having had an MRI that revealed "really inconsequential lacunar infarcts." (*Id.* 31:17–32:4.) USAA defines "lacunar infarcts" as "strokes caused by blocked arteries" (Mot. at 8).[4] For their part, the

---

4. An "infarct" is "[a] portion of tissue that has become stuffed with extravasated [effused] blood, serum, or other matter ...."

*Oxford English Dictionary* (2d ed. 1989; online version Sept. 2011).

Salkins do not define "lacunar infarcts" at all, though Dr. Salkin testified that he was told by the medical professional who diagnosed them that they were "really minor," and he therefore never thought to disclose them to USAA. (M. Salkin Dep. 32:6–10.) Presumably both Dr. Salkin's consultation of a psychiatrist and his MRI resulted in the generation of medical records, though Dr. Salkin told USAA he had none.[5]

Citing *Thompson v. Occidental Life Insurance Co.*, 9 Cal.3d 904, 916, 109 Cal. Rptr. 473, 513 P.2d 353 (1973), the Salkins argue Dr. Salkin had no obligation to disclose a minor ailment, and if he "had no present knowledge of the facts sought, or failed to appreciate the significance of information related to him, his incorrect or incomplete responses would not constitute grounds for rescission." *Thompson*, 9 Cal.3d at 916, 109 Cal.Rptr. 473, 513 P.2d 353. The Salkins therefore contend Dr. Salkin had no obligation to disclose either his psychiatric treatment for obsessive-compulsive disorder or the MRI that revealed his lacunar infarcts, and that USAA has no basis for rescission if Dr. Salkin lacked knowledge of the facts USAA sought or did not understand the significance of its questions.

*Thompson* is, at first, a compelling analog to this case, and therefore merits a full discussion. In that case, the insured, Thompson, was asked the following multipart questions in the course of a medical examination by a Dr. Epstein:

During the past five years have you:

[5]A. Consulted, been examined, or been treated by any physician or practitioner?

[5]B. Had an X-ray, electrocardiogram or any laboratory test or study?

[5]C. Had observation or treatment at a clinic, hospital, or sanitarium?

[5]D. Had or been advised to have a surgical operation?

. . .

Have you ever had or been told you had:

. . .

[6]B. . . . pain or pressure in the chest, or any disorder of the heart, blood or blood vessels?

[6]C. . . . any disorder of the lungs, bronchial tubes, throat or respiratory systems?

. . .

[6]I. Any disease, condition or disorder not indicated above?

*Thompson*, 9 Cal.3d at 914–15, 109 Cal. Rptr. 473, 513 P.2d 353.

In response to questions 5 A–D, Dr. Epstein recorded that Thompson had "[v]ein ligation—hernia—Providence Hosp. Oakland, 1963, M.C. Green MD 330 Elm St., Oakland, Cal." *Id.* at 915, 109 Cal.Rptr. 473, 513 P.2d 353. In response to questions 6 B, C, and I, however, Dr. Epstein recorded negative responses. *Id.* Thompson died after slipping and falling into his bathtub, *id.* at 909, 109 Cal.Rptr. 473, 513 P.2d 353, but his insurer, Occidental Life Insurance Co., refused to honor his policy, *id.* at 910, 109 Cal.Rptr. 473, 513 P.2d 353. Thompson's wife sued. Occidental lost at trial and appealed, *id.*, arguing among other things that any contract with Thompson was rendered unenforceable due to misrepresentations he made to Dr. Epstein, *id.* at 914–15, 109 Cal.Rptr. 473, 513 P.2d 353. Specifically, Thompson failed to tell Dr. Epstein that in the two months leading up to the medical examination, he had "approximately 10 medical consultations . . . with five different doctors," in which "he (1) had complained of chest pain, (2) had an electrocardiogram performed, (3)

---

5. Indeed, as the Court discusses, below, the Salkins' Opposition depends in part on the contention that USAA should have discovered these records itself, an argument that assumes the records exist, despite Dr. Salkin's representation.

was treated for 'phlebitis' (vein inflammation), ... (5) had his legs X-rayed ..., and (6) was advised to undergo a 'chemical sympathectomy' ...." *Id.* at 915, 109 Cal. Rptr. 473, 513 P.2d 353.

The California Supreme Court nevertheless affirmed the judgment against Occidental. First, it observed that many of the omitted items "appear to relate to the ailment which Thompson affirmatively disclosed in answering question 5," and therefore "the trial court might have concluded that it was the responsibility of the examining doctor to elicit additional details." *Id.* at 917, 109 Cal.Rptr. 473, 513 P.2d 353. It also noted that "none of the physicians with whom [Thompson] consulted testified that [Thompson] was ever advised that he had arteriosclerosis"—another condition Occidental argued that Thompson failed to disclose—and one of Thompson's physicians testified that he purposefully was vague with Thompson about his medical condition to avoid worrying him. *Id.* at 917, 109 Cal.Rptr. 473, 513 P.2d 353. Thus, the trial court could have concluded "that Thompson believed that he had a single leg circulation problem," and that he disclosed the problem properly. *Id.* The court further posited "that Thompson, as an ordinary layman, failed to recollect or appreciate the significance of the subject matter of the various ... consultations," and the technical diagnoses that resulted therefrom "might well have been meaningless jargon to him." *Id.* at 918, 109 Cal. Rptr. 473, 513 P.2d 353. In any event, the court added, the trial court "may have found that most of Thompson's undisclosed problems related to 'minor indispositions' rather than serious ailments ...." *Id.*

The unduly broad view of the holding in *Thompson* urged by the Salkins collides with the principle that even an unintentional misrepresentation can be the basis for rescission of an insurance policy. Under that standard, whether the insured appreciated the significance of the questions is irrelevant unless, perhaps, the question itself was vague. Adding another exception sketched out in *Thompson,* that an insured can also assess the severity of his own ailments to determine whether they meet an (undefined) threshold for reporting, *Thompson* swallows entirely the rule that any material misrepresentation is a basis for rescission. To make sense in the context of California's insurance law, *Thompson* needs a limiting principle.

USAA offers one, from a case predating, but not overruled by, *Thompson.* In *San Francisco Lathing Co. v. Penn Mut. Life Ins. Co.,* 144 Cal.App.2d 181, 186, 300 P.2d 715 (1956), the court held that "when [an] applicant is asked specific questions as to his medical history," as opposed to "generally whether he has had or been treated for any disease or ailment," "the failure to refer to temporary or minor indispositions" will not be excused.

In this case, Dr. Salkin was asked whether he had ever consulted a physician regarding a nervous system disorder, and though he admits consulting a psychiatrist regarding obsessive-compulsive disorder, he told USAA he never consulted anyone at all.[6] Dr. Salkin was asked whether he

---

6. USAA asked Dr. Salkin whether he sought treatment for a mental disorder, not whether it was a severe disorder. In *Thompson,* the court was lenient towards a layman's failure to realize that his ailments should have been reported in response to a question more general than the one USAA asked Salkin. USAA's question was specific, however, and Dr. Salkin is not a layman. Of course, as a physician, Dr. Salkin may have brought a different bias to the process than would a layman, basing his responses on his own assessment of the underlying severity of his problems, rather than simply answering the questions he was asked. Nevertheless, when presented with specific questions, Dr. Salkin's judgment should have had little role in his response.

had certain diagnostic tests within the last five years, interrupted the interviewer to volunteer that he had an EKG, and then said he had no other tests—not that the results of the other tests were insignificant, but that they never occurred. Finally, and most critically, Dr. Salkin volunteered that he had no medical records at all. He did so in a peremptory response to a question about whether USAA had his authorization to request medical records from any healthcare providers who treated him. Answering whether one has medical records is not a question that calls in any realistic way for the exercise of one's judgment; either the records exist or they do not.[7] Consequently, Dr. Salkin made at least one representation that cannot be excused by even the broadest reading of *Thompson.*

Even assuming Dr. Salkin should have disclosed his MRI, or his psychiatric treatment, or the existence of his medical records, the Salkins argue those failures are waived as grounds for rescission by USAA's failure to make a proper investigation of Dr. Salkin's medical history. USAA's initial failure to investigate Dr. Salkin's medical history properly, the Salkins assert, makes its subsequent investigation and rescission of Dr. Salkin's policy an example of unlawful post-claim underwriting.

The Court disagrees. The Salkins contend that California law required USAA to conduct an underwriting investigation robust enough to have belied Dr. Salkin's representations, and whether USAA did so is, according to the Salkins, a disputed question of fact. *See Hailey v. Cal. Physi-*

*cians' Serv.,* 158 Cal.App.4th 452, 469, 69 Cal.Rptr.3d 789 (2007) ("[W]e interpret 'medical underwriting' to require a plan to make reasonable efforts to ensure a potential subscriber's application is accurate and complete . . . . This will usually present a question of fact."). California law imposes no such requirement on USAA in this case. *See Nazaretyan v. Cal. Physicians' Serv.,* 182 Cal.App.4th 1601, 1608, 107 Cal. Rptr.3d 137 (2010) (distinguishing *Hailey* on the grounds that a health care service plan's basis for rescinding a health plan contract is governed by a different statutory provision, and therefore by different requirements, than an ordinary insurer's basis for rescinding an insurance policy) (citing *Nieto,* 181 Cal.App.4th at 65, 75–77, 103 Cal.Rptr.3d 906).

Assuming USAA was required to make some further investigation, Dr. Salkin's protestation in his application interview that there would be no records for USAA to discover undercuts the Salkins' argument that "[c]learly USAA could have obtained Dr. Salkin's medical records," because "Dr. Salkin's life insurance application contains an authorization allowing USAA to do just that." (Opp'n at 15.) While "USAA had no problem pulling Dr. Salkin's health claims history and obtaining his medical records during the rescission investigation" (*id.*), it did so after receiving from Mrs. Salkin a list of health care providers who treated Dr. Salkin and the name of the health insurer to which Dr. Salkin was submitting his medical claims. *Accord DiPasqua v. Cal. W. States Life Ins. Co.,* 106 Cal.App.2d 281, 284–85, 235 P.2d 64 (1951) (forbid-

---

7. At the hearing on this Motion, the Salkins' counsel argued that the Court should grant the Salkins the benefit of the inference that Dr. Salkin only meant that he had no medical records in his possession, or was merely reiterating that his self-diagnosis of high blood pressure generated no medical records. In

the context of the entire conversation, however, that inference is unreasonable. In deciding a motion for summary judgment, the Court need only grant the non-movant the benefit of reasonable inferences. *Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 680 (9th Cir.1985).

ding an insurer from rescinding a policy when, *prior to its issuance,* the insurer had in its possession both a medical records release and the name of a facility that treated the insured—items that would have allowed it to discover the insured's misrepresentations easily).

The Salkins put forth many other reasons why USAA's underwriters should have noticed something was amiss, based on other statements Dr. Salkin made in his interview and the results of his tests. The Court finds the rigors of USAA's underwriting procedures, or what it would have, could have, or should have done, are not at issue, when: (1) a material misrepresentation in an application, whether intentional or not, is a sufficient basis to rescind an insurance policy, and; (2) at least one of the misrepresentations in this case (*i.e.,* that Dr. Salkin had no medical records) had the effect of stymying further investigation, *see Lunardi v. Great–West Life Assurance Co.,* 37 Cal.App.4th 807, 822 n. 9, 44 Cal.Rptr.2d 56 (1995) (noting that an insured cannot withhold information and then fault his insurer for not discovering it).

Dr. Salkin neglected to inform USAA properly of facts material to processing an application for life insurance. Even if he did so because he genuinely believed that the information he withheld was immaterial, that was not Dr. Salkin's determination to make. This is particularly so because at least one representation, that Dr. Salkin had no medical records, discouraged USAA from eliciting those records from Dr. Salkin's treating physicians. Accordingly, the Court concludes there is no genuine dispute of material fact as to whether Dr. Salkin made material misrepresentations to USAA. The Court therefore GRANTS USAA's Motion for Summary Judgment as to the Salkins' claim that USAA breached a contract with Dr. Salkin by rescinding his insurance policy.

The Salkins also oppose summary judgment on their claim for breach of the covenant of good faith and fair dealing; however, because that claim is intertwined with their claim for breach of contract, which fails, the Court need not address the arguments supporting the Salkins' position. *See San Diego Housing Comm'n v. Indus. Indem. Co.,* 68 Cal.App.4th 526, 544, 80 Cal.Rptr.2d 393 (1998) ("Where a breach of contract cannot be shown, there is no basis for finding a breach of the covenant.") (citing *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 35–36, 44 Cal. Rptr.2d 370, 900 P.2d 619 (1995)). USAA is also entitled to summary judgment as to that claim. The Salkins' claim for relief from rescission under California Civil Code § 1692 fails because it too depends on the breach of contract claim, it is undisputed that USAA returned the Salkins' premiums, and finally, the Salkins did not oppose USAA's Motion as to that claim. Finally, the Salkins' request for punitive damages is denied as moot, as no claims remain for which punitive damages may be assessed. USAA's Motion is therefore granted in full.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS USAA's Motion for Summary Judgment.