Filed 7/29/22 Singh v. Inter-Con Security Systems CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SHAILENDRA SINGH, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> INTER-CON SECURITY SYSTEMS, INC., <br><br> Defendant and Respondent. | H047337 <br> (Santa Clara County <br> Super. Ct. No. 17CV313202) |

Inter-Con Security Systems, Inc. (Inter-Con), provides security guard services for government and commercial clients throughout California. Between March 2015 and May 2017, Shailendra Singh worked for Inter-Con as a security guard, assigned to provide security for the California Highway Patrol (CHP) at a Department of Motor Vehicles (DMV) branch in San Jose.

Singh sued Inter-Con in July 2017, asserting a single cause of action for violation of the Private Attorneys General Act (PAGA),[1] alleging that Inter-Con violated Labor Code section 201.3 by failing to pay Singh and similarly situated employees on a weekly basis. Inter-Con moved for summary judgment, arguing that, because Singh had worked

---

[1] Enacted in 2003, PAGA adopted Labor Code section 2698 et seq. and "created a type of qui tam action, authorizing a private party to bring an action to recover a penalty on behalf of the government and receive part of the recovery as compensation." (*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 753 (*Huff*); Lab. Code, § 2698 et seq.)

for Inter-Con for more than 90 consecutive days, an exception in Labor Code section 201.3, subdivision (b)(6) applied so that weekly pay was not required.

The trial court denied the motion, holding that the exception in Labor Code section 201.3, subdivision (b)(6) applies only where the employee's initial assignment was intended at the outset to last for more than 90 consecutive days, regardless of how long it actually lasts.

Shortly thereafter, Inter-Con brought a second motion for summary judgment, submitting new evidence which it contended showed that Singh was initially assigned to work for the CHP for more than 90 consecutive days so that, under the trial court's interpretation of Labor Code section 201.3, subdivision (b)(6), the exception still applies. The trial court granted the motion.

Singh appeals, arguing that Code of Civil Procedure section 437c, subdivision (f)(2), precluded Inter-Con from bringing the second motion for summary judgment, and that security guards are exempt from the 90-day rule in Labor Code section 201.3, subdivision (b)(6).

We conclude Singh's arguments lack merit and we therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Inter-Con is a security services company licensed as a private patrol operator by the California Bureau of Security and Investigative Services. In March 2015, Inter-Con hired Singh to work as a security guard for its client, the CHP. Singh then worked in that capacity at a local DMV branch in San Jose until May 2017, when he was suspended following a customer complaint. In June 2017, Singh was terminated from the CHP contract and offered an assignment for a different Inter-Con client; he refused, thus ending his employment with Inter-Con.

At the time Inter-Con initially hired Singh, its contract with the CHP extended through December 21, 2015, more than 90 days beyond the date Singh was hired. It is

2

undisputed for purposes of this appeal that Inter-Con assigned Singh to the CHP contract with the expectation that he would work there as long as Inter-Con had that contract.[2]

Singh filed the initial complaint in this action in July 2017. The operative second amended complaint alleged a single cause of action for violation of PAGA for failing to compensate employees in accordance with Labor Code section 201.3 by failing to pay them on a weekly basis.[3]

Inter-Con filed its initial motion for summary judgment in June 2018, arguing that the "weekly pay mandate" of Labor Code section 201.3, subdivision (b)(1) does not apply where employees work for a client for over 90 consecutive calendar days, pursuant to the statutory exception set forth in Labor Code section 201.3, subdivision (b)(6).[4] Inter-Con introduced evidence, including Singh's own admission, that Singh had worked for Inter-Con's client, CHP, for over two years. Singh did not dispute the facts Inter-Con relied on, but rather argued that the 90-day exception does not apply to security guards.

---

[2] As explained further below, in opposing Inter-Con's second motion for summary judgment in the trial court, Singh disputed that he was "assigned to work" for the CHP for more than 90 consecutive days. The trial court rejected that argument and Singh has not challenged it on appeal; accordingly, we omit a detailed summary of facts related thereto.

[3] The parties have not cited to any evidence in the record reflecting how often Inter-Con actually paid Singh. Singh claims he was paid "on a bi-weekly basis," but cites no evidence in the record in support of that claim. We may not consider any statements of fact not supported by the record. (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947.) At the same time, Inter-Con has not disputed Singh's assertion in the trial court or on appeal, and its motions for summary judgment did not introduce any evidence regarding how often it paid Singh. Accordingly, the question of whether Inter-Con paid Singh weekly is not before us. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [moving defendant bears the burden to show no triable issue of material fact] (*Aguilar*).)

[4] Inter-Con also argued that it is not subject to the weekly pay requirement of Labor Code section 201.3 because it is not a "temporary services employer" as defined in Labor Code section 201.3, subdivision (a)(1). The trial court rejected that argument; Inter-Con did not reassert it in its second motion and it is not at issue in this appeal.

3

The trial court denied Inter-Con's initial motion in January 2019. It held that the exception in Labor Code section 201.3, subdivision (b)(6) applies only where the employee is "assigned to work" for a client for more than 90 consecutive calendar days, regardless of how long the employee ultimately works there, and that Inter-Con had failed to introduce any evidence showing what period of time Singh was initially assigned to work for the CHP. According to the trial court, its interpretation of the statute "makes sense because the employer must be able to determine whether an employee is subject to the weekly pay requirement at the outset of his or her assignment, without complete certainty as to how long the assignment will last in fact" and "is consistent with subdivision (b)(l) of section 201.3, which imposes the weekly pay requirement 'regardless of when the assignment ends.' "

Less than two months later, Inter-Con filed its second motion for summary judgment. It argued that Singh was assigned to work for the CHP for more than 90 consecutive days at the outset, so that the exception in Labor Code section 201.3, subdivision (b)(6) still applies. In support, Inter-Con submitted evidence of its "Project Management Business Model," which it claimed showed that Inter-Con hires employees with the expectation they will be assigned to a specific client throughout the duration of the client's contract, and that its contract with the CHP extended for more than nine months at the time Singh was hired.

Singh argued that Inter-Con was precluded from bringing the second motion by Code of Civil Procedure section 437c, subdivision (f)(2), because the statute bars "repetitive" motions for summary judgment. Singh also disputed Inter-Con's evidence, arguing it did not show that Inter-Con intended at the outset to assign Singh to the CHP for more than 90 consecutive days. Lastly, Singh reiterated his argument that the 90-day exception in Labor Code section 201.3, subdivision (b)(6) does not apply to security guards at all. According to Singh, the Legislature amended Labor Code section 201.3 in

4

2016 expressly to exclude security guards from the 90-day exception contained in Labor Code section 201.3, subdivision (b)(6).

The trial court granted Inter-Con's second motion. It held that Code of Civil Procedure section 437c, subdivision (f)(2) did not preclude Inter-Con's second motion because, even if the section applies, the motion was premised on a different legal theory supported by different evidence—specifically, it corrected evidentiary deficiencies in the prior motion which had failed to address the elements of Singh's claim. The court also rejected Singh's argument that the 90-day exception does not apply to security guards, and determined that the newly introduced evidence satisfied Inter-Con's burden to show that Singh was assigned to work for the CHP for more than 90 consecutive calendar days. Because Singh failed to raise a disputed issue of material fact regarding the length of his assignment, the court granted Inter-Con's motion.

Judgment was entered in Inter-Con's favor on July 29, 2019. Singh timely appealed.

## II. DISCUSSION

Singh argues on appeal that (1) Code of Civil Procedure section 437c, subdivision (f)(2) precluded Inter-Con from bringing its second motion for summary judgment, and (2) the 90-day exception in Labor Code section 201.3, subdivision (b)(6) does not apply to security guards.[5]

### A. Standards of review

We review the trial court's decision to allow Inter-Con to file its second motion for summary judgment for an abuse of discretion. (*Nieto v. Blue Shield of California Life*

---

[5] On appeal, Singh does not challenge the sufficiency of Inter-Con's evidence as to whether he was actually assigned to work for the CHP for more than 90 consecutive calendar days at the outset. Accordingly, we do not review that issue. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 (*Bains*).)

5

& *Health Ins. Co.* (2010) 181 Cal.App.4th 60, 72 (*Nieto*); *Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1812.)

With respect to the trial court's order granting Inter-Con's motion for summary judgment, " ' "we review the record de novo to determine whether [it has] conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." ' " (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 (*Saelzler*).)

The moving defendant "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) Upon a defendant's prima facie showing of the nonexistence of an element of plaintiff's case, the plaintiff "is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*)

Under that approach, a reviewing court independently examines " '(1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to "decide whether the opposing party has demonstrated the existence of a triable, material fact issue." ' " (*Kim v. County of Monterey* (2019) 43 Cal.App.5th 312, 323.)

We also independently review statutory construction issues underlying the granting of a summary judgment motion. (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082 (*MacIsaac*).)

Although we review the record de novo, the appellant nevertheless bears the burden of showing error on appeal. (*Bains*, *supra*, 172 Cal.App.4th at p. 455.) Our independent review " ' "does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues." ' " (*Ibid.*) " ' "As with an appeal from any judgment, it is the appellant's responsibility to

6

affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority." ' " (*Ibid.*)

### B. The trial court did not abuse its discretion in allowing Inter-Con's second summary judgment motion

Singh argues that Inter-Con's second motion for summary judgment was precluded by Code of Civil Procedure section 437c, subdivision (f)(2). That subdivision provides: "A motion for summary adjudication may be made by itself or as an alternative to a motion for summary judgment and shall proceed in all procedural respects as a motion for summary judgment. A party shall not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court unless that party establishes, to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion." (Code Civ. Proc., § 437c, subd. (f)(2).)

According to Singh, Inter-Con's second motion was "repetitive," raising the same issue as the first motion but with no newly discovered facts or circumstances or a change of law as required by the statute. Inter-Con argues that its second motion addressed a "distinct theory and issue" not raised in the first motion: whether Inter-Con initially intended to assign Singh to work for the CHP for more than 90 consecutive days.[6]

As noted above, we review the trial court's decision to allow Inter-Con's second motion for an abuse of discretion. (*Nieto*, *supra*, 181 Cal.App.4th at p. 72.) Here, the trial court determined that the second motion was premised on a different legal theory

---

[6] Inter-Con also argues that Code of Civil Procedure section 437c, subdivision (f)(2), does not apply here at all because, by its own terms, it applies only where the prior motion was for summary *adjudication*, whereas Inter-Con's initial motion was for summary *judgment*. We need not address this issue because we determine that, even if the statute does apply, the trial court did not abuse its discretion allowing Inter-Con's second motion. (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1019, fn. 6 [appellate courts generally will not address issues whose resolution is unnecessary to disposition of the appeal].)

than the first and that it corrected evidentiary deficiencies in the prior motion. The trial court also analogized to case law which it found presented the same circumstances. We address two of those cases briefly and explain why we find them analogous as well.

In *Nieto*, the defendant's initial motion for summary judgment had failed to address the elements of its counter-claim for fraud against its insured. (*Nieto*, *supra*, 181 Cal.App.4th at p. 72.) Its subsequent motion for summary judgment corrected that omission and introduced new evidence in support of the claim, which the trial court held constituted a new issue not raised by the prior motion. (*Ibid.*)

Similarly, in *Patterson v. Sacramento City Unified School Dist.* (2007) 155 Cal.App.4th 821 (*Patterson*), the defendant's first motion for summary judgment argued that there was no statutory basis for imposing liability for negligent supervision or general negligence. (*Id.* at p. 827.) After the trial court held the facts were sufficient to show a duty owed to the plaintiff, defendant filed a second motion, in which it argued that the common law defense of assumption of risk negated any such duty. (*Ibid.*) The trial court explained that, while both motions involved " 'duty' in a *general* sense," they involved different legal theories, and "[a] comparison of the . . . material facts" showed that the second motion was not simply a " 'reformatted, condensed, and cosmetically repackaged' version of [the] first motion." (*Ibid.*, quoting *Bagley v. TRW, Inc.* (1999) 73 Cal.App.4th 1092, 1097.)

*Nieto* and *Patterson* support our conclusion that the trial court did not abuse its discretion in determining that the second motion was based on newly discovered facts or circumstances or a change of law supporting the issues reasserted therein. As in *Nieto*, Inter-Con's second motion was premised on a different legal theory. Here, Inter-Con argued in its second motion that Singh was initially assigned to work for the CHP for more than 90 consecutive calendar days. Specifically, it argued it was Inter-Con's intent at the outset of the assignment in March 2015 that Singh would work for the CHP for the remainder of the contract which, at that point, extended more than 90 days to December

2015. Inter-Con had not made that legal argument in its initial motion, where it argued only that Singh had *actually* worked more than 90 days assigned to the same client. Although each motion argued that the 90-day exception of Labor Code section 201.3, subdivision (b)(6) applies, the motions were premised on different legal theories. Similar to *Patterson*, while both motions involved the applicability of the 90-day exception in a *general* sense, they involved different legal theories. (*Patterson*, *supra*, 155 Cal.App.4th at p. 827.)

The motions were also based on different facts and evidence. The second motion introduced evidence of Inter-Con's "Project Management Business Model" and its contract with the CHP, evidence it had not submitted in support of its first motion. As in *Nieto*, the second motion corrected the omission from the first and introduced new evidence in support of the claim. (*Nieto*, *supra*, 181 Cal.App.4th at p. 72.)

As the trial court explained, "Inter-Con's first motion was premised on an incorrect legal theory and consequently failed to present necessary evidence, while its renewed motion is premised on a different theory supported by different evidence." Inter-Con initially interpreted the 90-day exception in Labor Code section 201.3, subdivision (b)(6), as focusing on the length of time actually worked; only after the trial court denied its initial motion did Inter-Con develop its new legal theory that the statute focuses on the intended length of assignment instead.

Under these facts, the trial court's determination that Inter-Con's second motion was premised on a different legal theory and corrected a defect and evidentiary deficiencies in the prior motion was not an abuse of discretion.

Singh contends that the second motion "relied on the very same facts" as the first. That is incorrect; as we have noted, Inter-Con submitted a new separate statement of undisputed facts with new evidence of its contract with the CHP and its "Project Management Business Model" for assigning employees to client contracts. Notably, Singh disputed those newly asserted facts in opposing the second motion,

9

whereas he had not disputed any of Inter-Con's asserted facts in support of its first motion, thereby implicitly recognizing that the second motion relied on different facts.

Singh also argues that Inter-Con "relied on the very same law, Section 201.3, and the 90-day exemption contained therein." But Singh disregards the new legal theory that Inter-Con advanced in support of its second motion which, as in *Patterson*, was sufficient to satisfy the requirements of Code of Civil Procedure section 437c, subdivision (f)(2). (*Patterson*, *supra*, 155 Cal.App.4th at p. 827.) It is immaterial that the underlying law is the same.

Singh contends that Inter-Con's second motion was "repetitive" and "duplicative," which Code of Civil Procedure section 437c, subdivision (f)(2) was intended to prevent. But, as summarized above, the second motion was not duplicative of the first, a point Singh appears to acknowledge elsewhere when he argues that Inter-Con "completely changed course and [took] a directly contradictory position" in its second motion. Although we do not believe the second motion was "directly contradictory" to the first motion, even if it were, Singh has not identified any authority suggesting it would be barred by Code of Civil Procedure section 437c, subdivision (f)(2), provided the other requisite criteria are established.

In sum, appellants have not demonstrated that there has been a miscarriage of justice or that the trial court exceeded the bounds of reason. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

### C. *There is no triable issue of material fact as to whether Inter-Con violated Labor Code section 201.3, subdivision (b)(1), because the 90-day exception in Labor Code section 201.3, subdivision (b)(6) applies*

We determine that Inter-Con has conclusively negated an essential element of Singh's case—the allegation that Inter-Con violated Labor Code section 201.3, subdivision (b)(1)'s weekly pay requirement—because the 90-day exception set forth in Labor Code section 201.3, subdivision (b)(6) applies. (*Saelzler*, *supra*, 25 Cal.4th at

10

p. 767.)[7]  As noted above, Singh has not challenged the trial court's construction of the facts showing Singh was initially assigned to the CHP for more than 90 consecutive calendar days.  Instead, Singh challenges only the effect of those facts—that is, he contends they do not defeat his claim because the 90-day exception in Labor Code section 201.3, subdivision (b)(6) does not apply here.  Thus, we are presented solely with a question of statutory interpretation, a pure question of law to which we apply a de novo standard of review.  (*Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 355-356; *Haniff v. Superior Court* (2017) 9 Cal.App.5th 191, 198 (*Haniff*).)

"We begin with the fundamental rule that our primary task is to determine the lawmakers' intent." (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.)  First, we consider the plain language of the statute, "giving the words their usual and ordinary meaning." (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 (*Smith*); *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 60 [words used by Legislature are "primary determinant" of legislative intent].)  "The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.]  In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " ' " (*Smith*, *supra*, at p. 83.)

"If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction." (*MacIsaac*, *supra*, 134 Cal.App.4th at p. 1083.)  "If the statutory terms are ambiguous, we may examine extrinsic sources, including the

_____

[7] We do not address the trial court's threshold determination discussed above that Labor Code section 201.3, subdivision (b)(1), "focuses on the period the employee 'is assigned to work for a client,' not the period the employee ultimately works at an assignment in reality."  Neither party has appealed that determination and, under either interpretation, the result would be the same—the 90-day exception would apply.

11

ostensible objects to be achieved and the legislative history." (*Smith*, *supra*, 39 Cal.4th at p. 83.)

Applying these standards here, we begin with the plain language of Labor Code section 201.3, which provides in pertinent part:

"(a) For purposes of this section, the following definitions apply:

"(1) 'Temporary services employer' means an employing unit that contracts with clients or customers to supply workers to perform services for the clients or customers and that performs all of the following functions: [¶] . . . [¶]

"(b)(1)(A) Except as provided in paragraphs (2) to (5), inclusive, if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and wages for work performed during any calendar week shall be due and payable not later than the regular payday of the following calendar week. A temporary services employer shall be deemed to have timely paid wages upon completion of an assignment if wages are paid in compliance with this subdivision.

"(B) Except as provided in paragraphs (2) to (5), inclusive, if an employee of a temporary services employer in the security services industry is a security guard who is registered pursuant to Chapter 11.5 (commencing with Section 7580) of Division 3 of the Business and Professions Code, is employed by a private patrol operator licensed pursuant to that chapter, and is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and wages for work performed during any workweek, as defined under Section 500, shall be due and payable not later than the regular payday of the following workweek. [¶] . . . [¶]

"(6) If an employee of a temporary services employer is assigned to work for a client for over 90 consecutive calendar days, this section does not apply unless the

12

temporary services employer pays the employee weekly in compliance with paragraph (1) of subdivision (b)."

Viewing this language in the broader context of the overall statutory scheme, the statutory language is clear and unambiguous. Labor Code section 201.3 requires payment of wages at specified times for various temporary employees assigned to work for a client.

Labor Code section 201.3, subdivision (b)(1)(A) and (B), where applicable, both require payment no less frequently than weekly. Labor Code section 201.3, subdivision (b)(1)(A) applies to specified employees of temporary services employers and provides that wages for work performed during any *calendar* week are due and payable no later than the regular payday of the following *calendar* week. (Lab. Code, § 201.3, subd. (b)(1)(A).) By contrast, Labor Code section 201.3, subdivision (b)(1)(B) applies specifically to employees of temporary services employers in the security services industry who are registered security guards employed by a licensed private patrol operator, and provides that wages for work performed during any *workweek*—as defined in Labor Code section 500—are due and payable no later than the regular payday of the following *workweek*.[8] (Lab. Code, § 201.3, subd. (b)(1)(B).)

Labor Code section 201.3, subdivision (b)(2) through (5), where applicable, requires payment at the end of each day or as provided in another specified section of the Labor Code. (Lab. Code, § 201.3, subd. (b)(2)-(5).)

Labor Code section 201.3, subdivision (b)(6), meanwhile, provides that Labor Code section 201.3 does not apply at all to employees of a temporary services employer

---

[8] Labor Code section 500, subdivision (b), provides: " 'Workweek' and 'week' mean any seven consecutive days, starting with the same calendar day each week. 'Workweek' is a fixed and regularly recurring period of 168 hours, seven consecutive 24-hour periods."

assigned to work for a client for over 90 consecutive calendar days.[9]  (Lab. Code, § 201.3, subd. (b)(6).)

Singh claims that Labor Code section 201.3, subdivision (b)(1)(B) "directly contradicts" subdivision (b)(6), so that "it is only logical" that subdivision (b)(1)(B) would "trump" subdivision (b)(6)'s 90-day exception.  We disagree—the subdivisions do not contradict each other.  Instead, subdivision (b)(6) states that Labor Code section 201.3 does not apply if the employee is assigned to work for a client for more than 90 consecutive calendar days.  In such instances, subdivision (b)(1)(B) does not apply.

Singh also relies on legislative history, which he argues shows that Labor Code section 201.3, subdivision (b)(1)(B) "was added to provide an exception" to subdivision (b)(6)'s exemption "as it relates to security guard employees."  However, "[i]t is an established principle that where statutory language is unambiguous, a court is precluded from considering legislative history." (*Huff*, *supra*, 23 Cal.App.5th at p. 755, citing *People v. Robles* (2000) 23 Cal.4th 1106, 1111 ["If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs."].)  Here, we have determined that the statutory language is unambiguous.

Even if we were to consider the legislative history on which Singh relies, it confirms our reading of the statute.  "[T]he plain meaning rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose." (*Huff*, *supra*, 23 Cal.App.5th at p. 755, citing *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  "Courts have therefore considered legislative history even in cases where the text of a statute is clear; but only to confirm the interpretation already apparent from the plain language, not to advance an alternative meaning." (*Huff*, *supra*, at p. 755, citing

---

[9] The subdivision also includes one exception not applicable here:  where the employer pays the employee weekly in compliance with Labor Code section 201.3, subdivision (b)(1).

*Miller v. Bank of America, NT & SA* (2009) 46 Cal.4th 630, 642 (*Miller*) [examination of legislative history to support conclusion regarding proper interpretation]; *Haniff*, *supra*, 9 Cal.App.5th at p. 202 [legislative history may provide additional authority confirming court's interpretation of a statute].) Applying that standard here, we determine that the legislative history confirms our interpretation of the statute.

Singh points to the 2016 amendment to Labor Code section 201.3, which added subdivision (b)(1)(B) pertaining specifically to security guards, and argues that the amendment "expressly mandates security guards to be paid on a weekly basis without any exceptions." He quotes two isolated portions of Senate Rules Committee analysis for support: (1) "*Need for this bill*. AB 1311 addresses an unusual court case that dealt with the timing of wages for security guards, Specifically, in *Huff v. Securitas Security Services*, Case No. 1-10-CV-172614 (2015), Securitas successfully argued that it has not violated the temporary services employer requirements as all of the claimants had assignments in excess of 90 days. With assignments of that length, security guards are explicitly exempted from the provisions of Labor Code Section 201.3, which was discussed earlier"; and (2) "[This bill provides] that if an employee of a temporary services employer is employed as a registered security officer, his or her wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and must be due and payable not later than the regular payday of the following *workweek*."

According to Singh, this language demonstrates that "[t]he Legislature emphasized that wages must be paid 'no less frequently than weekly' and that wages must be paid the 'following workweek,' without permitting any exemption for security guards assigned to a client for 90 days or more."

Again, we disagree. Singh omits other portions of the same committee analysis, which explain that the 2016 amendment was intended to address the fact that security firms utilize a different "workweek" than the calendar week: "[t]his bill allows temporary services employers to pay temporary private security officers based on a

15

workweek . . . rather than a calendar week." The committee analysis also explained the portion of the trial court ruling in *Huff* it was responding to: "However, in determining this calculation, the court used a calendar week of Sunday to Saturday, which is not the workweek utilized by Securitas. Rather, this is the default calendar week used by the Division of Labor Standards Enforcement for enforcement purposes. Securitas and other security firms utilize a Friday to Thursday workweek, which proponents note reflects the fact that their employees frequently work on the weekends, unlike many employers." The newly added Labor Code section 201.3, subdivision (b)(1)(B) addressed that issue by distinguishing the workweek from the calendar week for security guards, thereby confirming the interpretation already apparent from the plain language. (*Miller*, *supra*, 46 Cal.4th at p. 642.)

As the trial court in this case explained, "the legislative history makes it clear that the amendment was directed to a different aspect of the ruling in *Huff*, which, like the statutory language emphasized above, dealt with the *payday* applicable to temporary services employees." We agree.

There is also nothing in the legislative history to suggest that the intent was to provide an exception to Labor Code section 201.3, subdivision (b)(6)'s exemption "as it relates to security guard employees," as Singh contends. Indeed, the 2016 amendment did not change Labor Code section 201.3, subdivision (b)(6) and the legislative history does not indicate any desire to change or limit it.

### III. DISPOSITION

We affirm the judgment. Inter-Con is awarded its costs on appeal.

_____

                           Wilson,  J.


WE CONCUR:




_____

         Bamattre-Manoukian,  Acting  P.J.




_____

                Danner,  J.




Singh v. Inter-Con Security Systems, Inc.
H047337